LAWYERS FOR CLEAN WATER, INC.
Drevet Hunt (Bar. No. 240487)
        Email: drev@lawyersforcleanwater.com
Caroline Koch (Bar No. 266068)
        Email:  caroline@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

LOS ANGELES WATERKEEPER
Arthur Pugsley (Bar No. 252200)
        Email: arthur@lawaterkeeper.org
Melissa Kelly (Bar No. 300817)
        Email:  melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401
Telephone:  (310) 394-6162
Facsimile:  (310) 394-6178

*Attorneys for Plaintiffs*
*Additional Plaintiffs' Counsel Listed On Next Page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation; INLAND EMPIRE WATERKEEPER, a project of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation;<br><br>        Plaintiffs,<br>    v.<br><br>CEMEX CONSTRUCTION MATERIALS PACIFIC LLC, a Delaware corporation;<br><br>        Defendant. | Civil Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

Complaint

ORANGE COUNTY COASTKEEPER
Colin Kelly (Bar No. 266956)
        Email:  colin@coastkeeper.org
Sarah Spinuzzi (Bar No. 305658)
        Email:  sarah@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626
Telephone:  (714) 850-1965

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Complaint

Los Angeles Waterkeeper ("LA Waterkeeper"), Inland Empire Waterkeeper ("IE Waterkeeper") and Orange County Coastkeeper ("Coastkeeper") (collectively "Plaintiffs"), by and through counsel, hereby allege:

## I.     JURISDICTION AND VENUE

1.     This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.     On March 13, 2017, Plaintiffs issued 60-day notice letters ("Notice Letters") to Cemex Construction Materials Pacific LLC ("Cemex" or "Defendant"), which are attached hereto as Exhibit A (Compton Facility Notice Letter), Exhibit B (Fontana Facility Notice Letter) and Exhibit C (Irvine Facility Notice Letter) and incorporated by reference herein. The Notice Letters informed Cemex of its violations of California's General Permit for Discharges of Storm Water Associated with Industrial Activities (*National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001, Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ*) (hereinafter "Storm Water Permit") and the Clean Water Act at industrial facilities located at 2722 N. Alameda Street, Compton, California 90222 ("Compton Facility"), 16161 Construction Circle East, Irvine, California 92614 ("Irvine Facility") and 13220 Santa Ana Avenue, Fontana, California 92337 ("Fontana Facility") (referred to herein collectively as "the Facilities"). The Notice Letters informed Cemex of Plaintiffs' intent to file suit against it to enforce the Storm Water Permit and the Clean Water Act.

3.     The Notice Letters were also sent to the registered agent for Defendant, the Acting Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, and the Executive Director of the State Water

Resources Control Board ("State Board"), as required by 40 C.F.R. § 135.2(a)(1) and Section 505(b) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

4.    The Notice Letter for the Fontana Facility and Irvine Facility were sent to the Executive Officer of the Regional Water Quality Control Board, Santa Ana Region ("Santa Ana Regional Board"). The Notice Letter for the Compton Facility was sent to the Executive Officer of the Regional Water Quality Control Board, Los Angeles Region ("Los Angeles Regional Board").

5.    More than sixty (60) days have passed since the Notice Letters were served on Defendant and the State and Federal agencies. Plaintiffs are informed and believe, and thereon allege, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in the Notice Letters and in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

6.    Venue is proper in the Central District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this judicial district.

7.    Plaintiffs seek relief for Defendant's substantive and procedural violations of the Storm Water Permit and the Clean Water Act resulting from its activities at the Facilities.

## II.    PARTIES

### A.    Orange County Coastkeeper.

8.    Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California. Orange County Coastkeeper's office is located at 3151 Airway Avenue, Suite F-110, Costa Mesa, California 92626.

9.    Coastkeeper has over 2,000 members who live and/or recreate in and around the Santa Ana River watershed, Newport Bay watershed, and the Los Angeles River Watershed. Coastkeeper is dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of local surface waters. To further these

goals, Coastkeeper actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself, its members, and others.

10. Coastkeeper's members use and enjoy the Santa Ana River and its tributaries for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, engaging in scientific study, including monitoring and research activities, and/or for aesthetic enjoyment.

11. Coastkeeper's members use and enjoy Peters Canyon Channel, San Diego Creek, and Newport Bay its tributaries for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, engaging in scientific study, including monitoring and research activities, and/or for aesthetic enjoyment.

12. Coastkeeper's members use and enjoy Compton Creek, Los Angeles River and downstream waters for fishing, boating, swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, engaging in scientific study, including monitoring and research activities, and/or for aesthetic enjoyment.

13. Defendant's failure to comply with the procedural and substantive requirements of the Storm Water Permit and/or the Clean Water Act, including but not limited to discharges of polluted storm water and non-storm water from the Fontana Facility degrade water quality and harm aquatic life in the Santa Ana River watershed, and impair Coastkeeper's members' use and enjoyment of those waters.

14. Defendant's failure to comply with the procedural and substantive requirements of the Storm Water Permit and/or the Clean Water Act, including but not limited to discharges of polluted storm water and non-storm water from the Irvine Facility degrade water quality and harm aquatic life in the Newport Bay watershed, and impair Coastkeeper's members' use and enjoyment of those waters.

15. Defendant's failure to comply with the procedural and substantive requirements of the Storm Water Permit and/or the Clean Water Act, including but not limited to discharges of polluted storm water and non-storm water from the Compton

1   Facility degrade water quality and harm aquatic life in the Los Angeles River watershed,
2   and impair Coastkeeper's members' use and enjoyment of those waters.

3       16.     The violations of the Storm Water Permit and Clean Water Act at the
4   Facilities are ongoing and continuous. Thus, the interests of Coastkeeper's members have
5   been, are being, and will continue to be adversely affected by Cemex's failure to comply
6   with the Storm Water Permit and the Clean Water Act. The relief sought herein will
7   redress the harms to Coastkeeper caused by Cemex's activities.

8       17.     Continuing commission of the acts and omissions alleged herein will
9   irreparably harm Coastkeeper's members, for which harm they have no plain, speedy, or
10  adequate remedy at law.

11      **B.    Los Angeles Waterkeeper.**

12      18.     Los Angeles Waterkeeper is a non-profit 501(c)(3) public benefit corporation
13  organized under the laws of California with its main office at 120 Broadway, Suite 105,
14  Santa Monica, California 90401.

15      19.     LA Waterkeeper has approximately 3,000 members who live and/or recreate
16  in and around the Los Angeles area, including in the Los Angeles River watershed.
17  Waterkeeper is dedicated to the preservation, protection, and defense of the all coastal
18  and inland ground and surface waters in Los Angeles County. To further these goals,
19  Waterkeeper actively seeks federal and state agency implementation of the Clean Water
20  Act and, where necessary, directly initiates enforcement actions on behalf of itself, its
21  members, and others.

22      20.     LA Waterkeeper's members use and enjoy the Los Angeles area watersheds,
23  including in Compton Creek and the Los Angeles River watershed, for fishing, boating,
24  swimming, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking,
25  engaging in scientific study, including monitoring and research activities, and/or
26  aesthetic enjoyment.

27      21.     Continuing commission of the acts and omissions alleged herein will
28  irreparably harm Waterkeeper's members, for which harm they have no plain, speedy, or

1  adequate remedy at law.

2      **C.    Inland Empire Waterkeeper.**

3      22.    Inland Empire Waterkeeper Inland Empire Waterkeeper is a program of

4  Coastkeeper. IE Waterkeeper's office is located at 6876 Indiana Avenue, Suite D,

5  Riverside, California 92506.

6      8.    Together with Coastkeeper, IE Waterkeeper has approximately 2,000

7  members who live and/or recreate in and around the Santa Ana River watershed and

8  Newport Bay watershed. Coastkeeper is dedicated to the preservation, protection, and

9  defense of the environment, wildlife, and natural resources of local surface waters. To

10 further these goals, Coastkeeper actively seeks federal and state agency implementation

11 of the Clean Water Act and, where necessary, directly initiates enforcement actions on

12 behalf of itself, its members, and others.

13     9.    IE Waterkeeper's members use and enjoy the Santa Ana River and its

14 tributaries for fishing, boating, swimming, bird watching, picnicking, viewing wildlife,

15 sailing, kayaking, hiking, engaging in scientific study, including monitoring and research

16 activities, and/or for aesthetic enjoyment.

17     10.    IE Waterkeeper's members use and enjoy Peters Canyon Channel, San

18 Diego Creek, and Newport Bay its tributaries for fishing, boating, swimming, bird

19 watching, picnicking, viewing wildlife, sailing, kayaking, hiking, engaging in scientific

20 study, including monitoring and research activities, and/or for aesthetic enjoyment.

21     11.    Continuing commission of the acts and omissions alleged herein will

22 irreparably harm Waterkeeper's members, for which harm they have no plain, speedy, or

23 adequate remedy at law.

24     **D.    The Owner and/or Operator of the Facilities.**

25     12.    Plaintiffs are informed and believe, and thereon allege, that Cemex

26 Construction Materials Pacific LLC is an owner of the Facilities.

27     13.    Plaintiffs are informed and believe, and thereon allege, that Cemex

28 Construction Materials Pacific LLC has owned the Compton Facility since at least

---

Complaint                                    5

1   October 1, 2011.

2       14.    Plaintiffs are informed and believe, and thereon allege, that Cemex

3   Construction Materials Pacific LLC has owned the Irvine Facility since at least October 1,

4   2011.

5       15.    Plaintiffs are informed and believe, and thereon allege, that Cemex

6   Construction Materials Pacific LLC has owned the Fontana Facility since at least October

7   1, 2011.

8       16.    Plaintiffs are informed and believe, and thereon allege, that Cemex

9   Construction Materials Pacific LLC is an operator of the Facilities.

10      17.    Plaintiffs are informed and believe, and thereon allege, that Cemex

11  Construction Materials Pacific LLC has been an operator of the Facilities since at least

12  October 1, 2011.

13      18.    Plaintiffs are informed and believe, and thereon allege, that Cemex

14  Construction Materials Pacific LLC is an active Delaware Corporation.

15      19.    Plaintiffs refer to Cemex Construction Materials Pacific LLC herein as the

16  "Facilities Owner and/or Operator."

17      20.    Plaintiffs are informed and believe, and thereon allege, that the name and

18  address of the Registered Agent for Cemex Construction Materials Pacific LLC is

19  Corporate Creations Network, Inc., 1430 Truxtun Avenue, 5th Floor, Bakersfield,

20  California 93301.

21  **III.    LEGAL BACKGROUND**

22      **A.    The Clean Water Act.**

23      21.    The Clean Water Act requires point source discharges of pollutants to

24  navigable waters be regulated by an NPDES permit. 33 U.S.C. § 1311(a); *see* 40 C.F.R.

25  § 122.26(c)(1).

26      22.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the

27  discharge of any pollutant into waters of the United States unless the discharge complies

28  with various enumerated Sections of the CWA. Among other things, Section 301(a)

Complaint               6

prohibits discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342(b).

23.   "Waters of the United States" are defined as "navigable waters," and "all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including waters which are subject to the ebb and flow of the tide." 33 U.S.C. § 1362(7); 40 C.F.R. § 122.2.

24.   The "discharge of a pollutant" means, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12); *see* 40 C.F.R. § 122.2.

25.   The EPA promulgated regulations defining "waters of the United States." *See* 40 C.F.R. § 122.2. The EPA interprets waters of the United States to include not only traditionally navigable waters, but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and intermittent streams that could affect interstate commerce.

26.   The Clean Water Act confers jurisdiction over waters that are tributaries to traditionally navigable waters where the water at issue has a significant nexus to the navigable water. *See Rapanos v. United States*, 547 U.S. 715 (2006); *see also N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993 (9th Cir. 2007).

27.   A significant nexus is established if the "[receiving waters], either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters." *Rapanos*, 547 U.S. at 779; *N. Cal. River Watch*, 496 F.3d at 999-1000.

28.   A significant nexus is also established if waters that are tributary to navigable waters have flood control properties, including functions such as the reduction of flow, pollutant trapping, and nutrient recycling. *Rapanos*, 547 U.S. at 782; *N. Cal. River Watch*, 496 F.3d at 1000-1001.

29.   Section 505(a)(1) and Section 505(f) of the Clean Water Act provide for citizen enforcement actions against any "person" who is alleged to be in violation of an

Complaint                          7

"effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

30.    Cemex Construction Materials Pacific LLC is a "person" within the meaning of Section 502(5) of the Clean Water Act. *See* 33 U.S.C. § 1362(5).

31.    An action for injunctive relief is authorized under Section 505(a) of the Clean Water Act. *See* 33 U.S.C. § 1365(a).

32.    Each separate violation of the Clean Water Act subjects the violator to a penalty pursuant to Sections 309(d) and 505 of the CWA. *See* 33 U.S.C. §§ 1319(d) and 1365(a); Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4.

33.    Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), permits prevailing or substantially prevailing parties to recover litigation costs, including attorneys' fees, experts' fees, and consultants' fees.

**B.    California's Storm Water Permit.**

34.    Section 402(p) of the Clean Water Act establishes a framework for regulating industrial storm water discharges under the NPDES permit program. 33 U.S.C. § 1342(p).

35.    Section 402(b) of the Clean Water Act allows each state to administer its own EPA-approved NPDES permit program for regulating the discharge of pollutants, including discharges of polluted storm water. *See* 33 U.S.C. § 1342(b). States with approved NPDES permit programs are authorized by section 402(b) to regulate industrial storm water discharges through individual NPDES permits issued to dischargers and/or through the issuance of a statewide general NPDES permit applicable to all industrial storm water dischargers. *See id.*

36.    California is a state authorized by EPA to issue NPDES permits.

37.    In California, the State Board is charged with regulating pollutants to protect California's water resources. *See* Cal. Water Code § 13001.

38.    The Storm Water Permit is a statewide general NPDES permit issued by the State Board pursuant to the Clean Water Act.

39.    Between 1997 and June 30, 2015, the Storm Water Permit in effect was Order No. 97-03-DWQ, which Plaintiffs refer to as the "1997 Permit."

40.    On July 1, 2015, pursuant to Order No. 2014-0057-DWQ the Storm Water Permit was reissued, which Plaintiffs refer to as the "2015 Permit."

41.    The 2015 Permit superseded the 1997 Permit, except for enforcement purposes, and its terms are as stringent, or more stringent, than the terms of the 1997 Permit. *See* 2015 Permit, Finding 6.

42.    In order to discharge storm water lawfully in California, industrial dischargers must secure coverage under the Storm Water Permit and comply with its terms, or obtain and comply with an individual NPDES permit. 1997 Permit, Finding #2; 2015 Permit Finding #12. Prior to beginning industrial operations, dischargers are required to apply for coverage under the Storm Water Permit by submitting a Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI") to the State Board. *See* 1997 Permit, Finding #3; *see also* 2015 Permit, Finding 17.

43.    Violations of the Storm Water Permit are violations of the Clean Water Act. *See* 1997 Permit, Section C(1) (Standard Provisions); *see also* 2015 Permit, Section XXI(A) (Duty to Comply).

**C.    The Storm Water Permit Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations.**

44.    The Storm Water Permit contains certain absolute prohibitions. The Storm Water Permit prohibits the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise authorized by an NPDES permit, to the waters of the United States. *See* 1997 Permit, Discharge Prohibition A(1); *see also* 2015 Permit, Discharge Prohibition III(B).

45.    The Storm Water Permit Effluent Limitations require dischargers covered by the Storm Water Permit to reduce or prevent pollutants in storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for

toxic or non-conventional pollutants, and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biochemical oxygen demand ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), and pH. *See* 1997 Permit, Effluent Limitation B(3); *see also* 2015 Permit, Section V(A).

46.     Pursuant to the CWA and the Storm Water Permit, dischargers must employ Best Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate storm water pollution. 33 U.S.C. § 1311(b); 1997 Permit, Effluent Limitation B(3); 2015 Permit, Effluent Limitation V(A).

47.     EPA's NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("MSGP") includes numeric benchmarks for pollutant concentrations in storm water discharges ("EPA Benchmarks").

48.     The EPA Benchmarks provide an objective standard to determine whether a facility's BMPs are successfully developed and/or implemented. *See* MSGP, 80 Fed. Reg. 34,403, 34,405 (June 16, 2015); MSGP, 73 Fed. Reg. 56,572, 56,574 (Sept. 29, 2008); MSGP, 65 Fed. Reg. 64,746, 64,766-67 (Oct. 30, 2000).

49.     The EPA Benchmarks for the following parameters are as follows: pH – 6.0 – 9.0 standard units ("s.u."); TSS – 100 mg/L; iron – 1.0 mg/L; nitrate plus nitrate as nitrogen ("N+N") – 0.68 mg/L; O&G – 15 mg/L; and aluminum – 0.75 mg/L. Additional EPA Benchmarks for heavy metals, which depend on the hardness of the receiving water, also apply to storm water discharges from the Facilities.

50.     Discharges from an industrial facility containing pollutant concentrations that exceed EPA Benchmarks indicate that BMPs that meet BAT for toxic pollutants and/or BCT for conventional pollutants have not been developed and/or implemented at the facility. *Id*.

51.     The Storm Water Permit Receiving Water Limitations prohibit storm water discharges from adversely impacting human health or the environment. *See* 1997 Permit,

Complaint                                    10

Receiving Water Limitation C(1); *see also* 2015 Permit, Section VI(B).

52.    Storm water discharges with pollutant levels that exceed levels known to adversely impact aquatic species and the environment are violations of Receiving Water Limitation C(1) of the 1997 Permit and Section VI(B) of the 2015 Permit.

53.    The Storm Water Permit Receiving Water Limitations also prohibit storm water discharges that cause or contribute to an exceedance of any "applicable Water Quality Standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." *See* 1997 Permit, Receiving Water Limitation C(2); *see also* 2015 Permit, Receiving Water Limitation VI(A).

54.    Water Quality Standards ("WQS") are pollutant concentration levels determined by the State Board, the various regional boards, and the EPA to be protective of the beneficial uses of the waters that receive polluted discharges.

55.    The State of California regulates water quality through the State Board and the nine Regional Boards. Each Regional Board maintains a separate Water Quality Control Plan that contains WQS for water bodies within its geographical area.

56.    The Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties ("Los Angeles Basin Plan") identifies the "Beneficial Uses" of water bodies in the Los Angeles region.

57.    The existing and potential Beneficial Uses for Compton Creek downstream of the point at which it receives storm water discharges from the Compton Facility include: Municipal and Domestic Supply, Ground Water Recharge, Warm Freshwater Habitat, Wildlife Habitat, and Wetland Habitat. *See* Los Angeles Basin Plan at Table 2-1.

58.    The existing and potential Beneficial Uses of Reach 1 of the Los Angeles River downstream of the Compton Facility are: Municipal and Domestic Supply, Industrial Service Supply, Industrial Process Supply, Ground Water Recharge, Marine Habitat, Rare, Threatened, or Endangered Species, Migration of Aquatic Organisms, Spawning, Reproduction, and/or Early Development, Shellfish Harvesting, Warm Freshwater Habitat, and Wildlife Habitat. *See* Los Angeles Basin Plan at Table 2-1.

59.     The existing and potential Beneficial Uses of the Los Angeles River Estuary downstream of the Compton Facility are: Industrial Service Supply, Navigation, Commercial and Sport Fishing, Estuarine Habitat, Marine Habitat, Wildlife Habitat, Rare, Threatened, or Endangered Species, Migration of Aquatic Organisms, Spawning, Reproduction, and/or Early Development, Shellfish Harvesting, and Wetland Habitat. *See* Los Angeles Basin Plan at Table 2-1.

60.     The Water Quality Control Plan for the Santa Ana River Basin, California Regional Water Quality Control Board, Santa Ana Region, 3rd Ed., (Rev. June 2011) ("Santa Ana Basin Plan") identifies the "Beneficial Uses" of water bodies in the Santa Ana region.

61.     The existing and potential Beneficial Uses for San Sevaine Channel downstream of the point at which it receives storm water discharges from the Fontana Facility include: Municipal and Domestic Supply, Groundwater Recharge, Water Contact Recreation, Non-contact Water Recreation, Cold Freshwater Habitat, and Wildlife Habitat. *See* Santa Ana Basin Plan at Table 3-1.

62.     The existing and potential Beneficial Uses of Reach 3 of the Santa Ana River downstream of the Fontana Facility are: Agricultural Supply, Groundwater Recharge, Water Contact Recreation, Non-Contact Water Recreation, Warm Freshwater Habitat, Wildlife Habitat, Rare, Threatened or Endangered Species, and Spawning, Reproduction and Development. *See* Santa Ana Basin Plan at Table 3-1.

63.     The existing and potential Beneficial Uses of Reach 2 of the Santa Ana River downstream of the Fontana Facility are: Agricultural Supply, Groundwater Recharge, Water Contact Recreation, Non-contact Water Recreation, Warm Freshwater Habitat, Wildlife Habitat, and Rare, Threatened or Endangered Species. *See* Basin Plan at Table 3-1.

64.     The existing and potential Beneficial Uses of Reach 1 of the Santa Ana River downstream of the Fontana Facility are: Water Contact Recreation (access prohibited), Non-Contact Water Recreation, Warm Freshwater Habitat, and Wildlife

Habitat. *See* Santa Ana Basin Plan at Table 3-1.

65.     The intermittent Beneficial Uses for Peters Canyon Channel downstream of the point at which it receives storm water discharges from the Irvine Facility include: Groundwater Recharge (GWR); Water Contact Recreation, Non-contact Water Recreation, Warm Freshwater Habitat, and Wildlife Habitat. *See* Santa Ana Basin Plan at Table 3-1.

66.     The existing and potential Beneficial Uses of Reach 1 of San Diego Creek downstream of the Irvine Facility are: Water Contact Recreation, Non-contact Water Recreation, Warm Freshwater Habitat, and Wildlife Habitat. *See* Santa Ana Basin Plan at Table 3-1.

67.     The existing and potential Beneficial Uses of Upper Newport Bay downstream of the Irvine Facility are: Water Contact Recreation, Non-contact Water Recreation, Commercial and Sportfishing, Preservation of Biological Habitats of Special Significance, Rare, Threatened or Endangered Species, Spawning, Reproduction and Development, Marine Habitat, Shellfish Harvesting, and Estuarine Habitat. *See* Santa Ana Basin Plan at Table 3-1.

68.     The existing and potential Beneficial Uses of Lower Newport Bay downstream of Irvine Facility are: Water Contact Recreation, Non-contact Water Recreation, Commercial and Sportfishing, Wildlife Habitat, Rare, Threatened or Endangered Species, Spawning, Reproduction and Development, Marine Habitat, Shellfish Harvesting, and Navigation. *See* Santa Ana Basin Plan at Table 3-1.

69.     Surface waters that cannot support the Beneficial Uses of those waters listed in the Basin Plans are designated as impaired water bodies pursuant to Section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d).

//

//

//

//

Complaint                                          13

70.     According to the 2012 303(d) List of Impaired Water Bodies,[1] Compton Creek downstream of the Compton Facility is impaired for *E. Coli* and *Enterococcus*, Copper, Lead, and pH.

71.     According to the 2012 303(d) List of Impaired Water Bodies, Reach 1 of the Los Angeles River downstream of the Compton Facility is impaired for Ammonia, Cyanide, Diazinon, *E. Coli* and *Enterococcus*, Cadmium, Copper, Dissolved Lead, Nitrate, Nitrite, Total Nitrogen, Dissolved Oxygen, Temperature, Total Phosphorus, and pH.

72.     According to the 2012 303(d) List of Impaired Water Bodies, the Los Angeles River Estuary downstream of the Compton Facility is impaired for Chlordane, Dichlorodiphenyltrichloroethane ("DDT"), Polychlorinated biphenyls ("PCBs"), Sediment Toxicity, and Trash.

73.     According to the 2012 303(d) List of Impaired Water Bodies, San Pedro Bay is impaired for PCBs and Total Chlordane.

74.     According to the 2012 303(d) List of Impaired Water Bodies, Reach 3 of the Santa Ana River downstream of the Fontana Facility is impaired for Copper, Lead, and Pathogens.

75.     According to the 2012 303(d) List of Impaired Water Bodies, Reach 2 of the Santa Ana River downstream of the Fontana Facility is impaired for Indicator Bacteria.

76.     According to the 2012 303(d) List of Impaired Water Bodies, Peters Canyon Channel downstream of the Irvine Facility is impaired for DDT, Indicator Bacteria, Toxaphene, and pH.

77.     According to the 2012 303(d) List of Impaired Water Bodies, Reach 1 of the San Diego Creek downstream of the Irvine Facility is impaired for Fecal Coliform,

---

[1] 2012 Integrated Report – All Assessed Waters, *available at* http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2012.shtml (last accessed on February 22, 2017).

1   Nutrients, Pesticides, Sedimentation/Siltation, Selenium, and Toxaphene.

2        78.    According to the 2012 303(d) List of Impaired Water Bodies, Upper

3   Newport Bay downstream of the Irvine Facility is impaired for Chlordane, Copper, DDT,

4   Indicator Bacteria, Metals, Nutrients, PCBs, Pesticides, Sediment Toxicity, and

5   Sedimentation/Siltation.

6        79.    According to the 2012 303(d) List of Impaired Water Bodies, Lower

7   Newport Bay downstream of the Irvine Facility is impaired for Chlordane, Copper, DDT,

8   Indicator Bacteria, Nutrients, PBCs, Pesticides, and Sediment Toxicity.

9        80.    Polluted discharges from industrial sites, such as the Facilities, contribute to

10  the degradation of these already impaired surface waters and aquatic wildlife dependent

11  on these waters.

12       81.    Discharges of pollutants at levels above WQS contribute to the impairment

13  of the Beneficial Uses of the waters receiving the discharges.

14       82.    WQS applicable to dischargers covered by the Storm Water Permit include,

15  but are not limited to, those set out in the Santa Ana Basin Plan or the Los Angeles Basin

16  Plan, depending on the location of the dischargers facility, and in the Criteria for Priority

17  Toxic Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

18       83.    The Santa Ana Basin Plan and the Los Angeles Basin Plan sets forth

19  narrative WQS for inland surface waters and enclosed bay and estuaries for, among other

20  things: floating material, O&G, pH, settleable matter, suspended materials, and toxic

21  substances.

22       84.    The CTR includes numeric criteria set to protect human health and the

23  environment in the State of California. Water Quality Standards; Establishment of

24  Numeric Criteria for Priority Toxic Pollutants for the State of California Factsheet, EPA-

25  823-00-008 (April 2000), available at:

26  http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

27       85.    Discharges with pollutant levels in excess of the CTR criteria, the Basin Plan

28  standards, and/or other applicable WQS are violations of Receiving Water Limitation

Complaint               15

C(2) of the 1997 Permit and Section VI(A) of the 2015 Permit.

**D.     The Storm Water Permit Storm Water Pollution Prevention Plan Requirements.**

86.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") at the time industrial activities begin. 1997 Permit, Section A(1)(a) and E(2); 2015 Permit, Sections I(I) (Finding 54), X(B). The SWPPP must identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water and authorized non-storm water discharges from the facility. 1997 Permit, Section A(2); 2015 Permit, Section X(G). The SWPPP must identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges. 1997 Permit, Section A(2); 2015 Permit, Section X(H). The SWPPP must include BMPs that achieve pollutant discharge reductions attainable via BAT and BCT. 1997 Permit, Order Section A(2); 2015 Permit, Section I(D) (Finding 32), Section X(C).

87.     The SWPPP must include: a narrative description and summary of all industrial activity, potential sources of pollutants, and potential pollutants; a site map indicating the storm water conveyance system, associated points of discharge, direction of flow, areas of actual and potential pollutant contact, including the extent of pollution-generating activities, nearby water bodies, and pollutants control measures; a description of storm water management practices; a description of the BMPs to be implemented to reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges; the identification and elimination of non-storm water discharges; the location where significant materials are being shipped, stored, received, and handled, as well as the typical quantities of such materials and the frequency with which they are handled; a description of dust and particulate-generating activities; and a description of individuals and their current responsibilities for developing and implementing the SWPPP. 1997 Permit, Section A(1)-(10); 2015 Permit, Section X.

88.     The objectives of the SWPPP are to identify and evaluate sources of

pollutants associated with industrial activities that may affect the quality of storm water discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from industrial facilities. 1997 Permit, Section A(2); 2015 Permit, Section X.

89. The Storm Water Permit requires the discharger to evaluate the SWPPP on an annual basis and revise it as necessary to ensure compliance with the Storm Water Permit. 1997 Permit, Section A(9); 2015 Permit, Section X(A)(9).

90. The Storm Water Permit requires that the discharger conduct an annual comprehensive site compliance evaluation that includes a review of all visual observation records, inspection reports and sampling and analysis results, a visual inspection of all potential pollutant sources for evidence of, or the potential for, pollutants entering the drainage system, a review and evaluation of all BMPs to determine whether the BMPs are adequate, properly implemented and maintained, or whether additional BMPs are needed, and a visual inspection of equipment needed to implement the SWPPP. 1997 Permit, Sections A(9)(a)-(c); 2015 Permit, Section XV.

91. Section A(9)(d) of the 1997 Permit requires that the discharger submit an evaluation report that includes an identification of personnel performing the evaluation, the date(s) of the evaluation(s), necessary SWPPP revisions, a schedule for implementing SWPPP revisions, any incidents of non-compliance and the corrective actions taken, and a certification that the discharger is in compliance with the Storm Water Permit. 1997 Permit, Section A(9)(d)(i)-(vi). If certification of compliance cannot be provided, the discharger must explain in the evaluation report why the facility is not in compliance with the Storm Water Permit. *Id*., Section A(9)(d). The evaluation report shall be submitted as part of the Annual Report specified in Section B(14) of the Storm Water Permit. *Id*.

92. The SWPPP and site maps must be assessed annually and revised as necessary to ensure accuracy and effectiveness. 1997 Permit, Sections A(1), B(3)-(4); 2015 Permit, Sections I(J) (Finding 55), X(B)(1).

//

**E.     The Storm Water Permit Monitoring and Reporting Requirements.**

93.     The 1997 Permit required facility operators to develop and implement a monitoring and reporting program ("M&RP") when industrial activities begin at a facility. 1997 Permit, Sections B(1)-(2) and E(3). The 2015 Permit requires implementation of an M&RP. 2015 Permit, Sections X(I) and XI.

94.     The M&RP must ensure that storm water discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the 1997 Permit. *See* 1997 Permit, Section B(2) The M&RP must ensure that practices at the facility to prevent or reduce pollutants in storm water and authorized non-storm water discharges are evaluated and revised to meet changing conditions at the facility, including revision of the SWPPP. *Id.*

95.     The 2015 Permit requires facility operators to monitor and sample storm water discharges to ensure that the facility is complying with the terms of the 2015 Permit. 2015 Permit, Sections I(J) (Findings 55-56) and XI.

96.     The objectives of the M&RP are to ensure that BMPs have been adequately developed and implemented, revised if necessary, and to ensure that storm water and non-storm water discharges are in compliance with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. 1997 Permit, Sections B(2)(a) and B(2)(b); 2015 Permit, Sections X(I) and XI.

97.     Section B(2)(d) of the 1997 Permit and Section XI(A)(4) of the 2015 Permit require that the M&RP shall be revised as necessary to ensure compliance with the Storm Water Permit.

98.     Section B(4)(a) of the 1997 Permit and Section XI(A) of the 2015 Permit require dischargers to conduct monthly visual observations of storm water discharges.

99.     Section B(4)(c) of the 1997 Permit and Section XI(A)(2) of the 2015 Permit require dischargers to document the presence of any floating and suspended materials, oil and grease, discolorations, turbidity, or odor in the discharge, and the source of any pollutants in storm water discharges from the facility. Dischargers are required to

Complaint                                     18

maintain records of observations, observation dates, discharge locations observed, and responses taken to reduce or prevent pollutants from contacting storm water discharges. *See* 1997 Permit, Section B(4)(c); 2015 Permit, Section XI(A)(3).

100.   The Storm Water Permit also requires dischargers to revise the SWPPP as necessary to ensure that BMPs are effectively reducing and/or eliminating pollutants at the facility. 1997 Permit, Section B(4)(c); 2015 Permit, Section X(B)(1).

101.   The Storm Water Permit requires dischargers to visually observe and collect samples of storm water discharges from all locations where storm water is discharged. 1997 Permit, Sections B(5) and B(7); 2015 Permit Section XI(B)(4).

102.   Section B(5)(a) of the 1997 Permit required dischargers to collect storm water samples during the first hour of discharge from the first storm event of the Wet Season and at least one other storm event in the Wet Season. All storm water discharge locations must be sampled. Facility operators that do not collect samples from the first storm event of the Wet Season are still required to collect samples from two other storm events of the Wet Season and must explain in the Annual Report why the first storm event was not sampled.

103.   Section B(15) of the 1997 Permit required dischargers participating in a group monitoring plan to collect at least two (2) samples from each discharge point at the Facility over a five (5) year period. *See* 1997 Permit, Sections B(5), B(7), and B(15).

104.   Section XI(B)(3) of the 2015 Permit requires dischargers participating in a compliance group to collect and analyze storm water samples from one (1) QSE within the first half of each reporting year (July 1 to December 31) and one (1) QSE within the second half of each reporting year (January 1 to June 30).

105.   The Facilities were and/or are members of the Building Materials Industry Group Monitoring Program, and thus the Facilities Owner and/or Operator must comply with the group monitoring provisions set forth in Section B(15) of the 1997 Permit and Section XI(B)(3) of the 2015 Permit.

106.   Section B(5)(b) required that sampling conducted pursuant to the

1997 Permit occur during scheduled facility operating hours that are preceded by at least three (3) working days without storm water discharge.

107.   Section XI(B)(1) of the 2015 Permit requires sampling if a precipitation event produces a discharge for at least one drainage area, and it is preceded by forty-eight (48) hours with no discharge from any drainage area ("QSE").

108.   Section XI(B)(2) of the 2015 Permit requires dischargers to collect and analyze storm water samples from two (2) QSEs within the first half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of each reporting year (January 1 to June 30).

109.   Section XI(B)(11) of the 2015 Permit, among other requirements, provides that permittees must submit all sampling and analytical results for all samples via Storm Water Multiple Application & Report Tracking System ("SMARTS") within thirty (30) days of obtaining all results for each sampling event.

110.   Section B(5)(c)(i) of the 1997 Permit required dischargers to analyze each sample for pH, specific conductance ("SC"), TSS, and total organic carbon ("TOC"). A discharger may substitute analysis for O&G instead of TOC.

111.   Section B(5)(c)(ii) of the 1997 Permit required dischargers to analyze each sample for toxic chemicals and other pollutants likely to be present in significant quantities in the storm water discharged from the facility.

112.   Section B(5)(c)(iii) and Table D of the 1997 Permit and Table 1 of the 2015 Permit require facilities classified as Standard Industrial Classification ("SIC") code 3273 (Ready-Mix Concrete), such as the Facilities, to also analyze storm water samples for iron, as well as other parameters required by the Regional Board.

113.   Section XI(B)(6)(a)-(b) of the 2015 Permit requires dischargers to analyze samples for TSS, O&G, and pH.

114.   Section XI(B)(6)(c) of the 2015 Permit requires dischargers to analyze samples for pollutants associated with industrial operations.

115.   Section XI(B)(6) of the 2015 Permit also requires dischargers to analyze

storm water samples for additional applicable industrial parameters related to receiving waters with 303(d) listed impairments, or approved Total Maximum Daily Loads.

116.   Section B(14) of the 1997 Permit required that dischargers submit an Annual Report to the applicable Regional Board by July 1 of each year. The Annual Report must include a summary of visual observations and sampling results, an evaluation of the visual observations and sampling and analysis results, laboratory reports, the annual comprehensive site compliance evaluation report specified in Section A(9), an explanation of why a facility did not implement any activities required, and the records specified in Section B(13)(i).

117.   Section XVI of the 2015 requires dischargers to submit an annual report with a Compliance Checklist that indicates whether a discharger complies with, and has addressed all applicable requirements of the 2015 Permit, an explanation for any non-compliance of requirements within the reporting year, as indicated in the Compliance Checklist, an identification, including page numbers and/or Sections, of all revisions made to the SWPPP within the reporting year, and the date(s) of the Annual Evaluation.

**F.   The 2015 Permit Exceedance Response Actions Requirements.**

118.   When the 2015 Permit became effective on July 1, 2015, all permittees were in "Baseline status." See 2015 Permit, Section XII(B). A permittee's Baseline status for any given parameter changes to "Level 1 status" if sampling results indicate a Numeric Action Level ("NAL") exceedance for that same parameter. *See* 2015 Permit, Section XII(C).

119.   Level 1 status commences on July 1 following the reporting year during which the exceedance(s) occurred. *See* 2015 Permit, Section XII(C). By October 1 following commencement of Level 1 status, permittees are required to: complete an evaluation, with the assistance of a Qualified Industrial Stormwater Practioner ("QISP"), of the industrial pollutant sources at the facility that are or may be related to the NAL exceedance(s); and identify in the evaluation the corresponding BMPs in the SWPPP and any additional BMPs and SWPPP revisions necessary to prevent future NAL

Complaint                                21

exceedances and to comply with the requirements of Storm Water Permit. *See* 2015 Permit, Section XII(C)(1)(a)-(c).

120.   Although the evaluation may focus on the drainage areas where the NAL exceedance(s) occurred, all drainage areas shall be evaluated. *See* 2015 Permit, Section XII(C)(1)(c).

121.   Based upon this Level 1 status evaluation, the permittee is required to, as soon as practicable but no later than January 1 following commencement of Level 1 status, revise the SWPPP as necessary and implement any additional BMPs identified in the evaluation, certify and submit via SMARTS a Level 1 Exceedance Response Action ("ERA") Report prepared by a QISP that includes the a summary of the Level 1 ERA Evaluation and a detailed description of the SWPPP revisions and any additional BMPs for each parameter that exceeded an NAL. *See* 2015 Permit, Section XII(C)(2)(a)(i)-(ii).

122.   The permittee in Level 1 status must also certify and submit via SMARTS the QISP's identification number, name, and contact information (telephone number, e-mail address) no later than January 1 following commencement of Level 1 status. *See* 2015 Permit, Section XII(C)(2)(a)(iii).

123.   A permittee's Level 1 status for a parameter will return to Baseline status once a Level 1 ERA Report has been completed, all identified additional BMPs have been implemented, and results from four (4) consecutive qualified storm events that were sampled subsequent to BMP implementation indicate no additional NAL exceedances for that parameter. *See* 2015 Permit, Section XII(C)(2)(b).

## IV.   FACTUAL BACKGROUND

### A.   The Facilities' Storm Water Permit Coverage.

#### 1.  The Compton Facility's Storm Water Permit Coverage.

124.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator obtained Storm Water Permit coverage for the Compton Facility under the 1997 Permit by submitting a Notice of Intent to the State Board.

125.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

1   Owner and/or Operator submitted an NOI on May 28, 2015, to continue its Storm Water

2   Permit coverage for the Compton Facility under the 2015 Permit ("2015 Compton NOI").

3         126.   Plaintiffs are informed and believe, and thereon allege, that in the 2015

4   Compton NOI the Facilities Owner and/or Operator identified the owner/operator of the

5   Compton Facility as Cemex Construction Materials Pacific LLC" and the Facility name

6   and location as "Cemex Construction Materials Pacific LLC, 2722 N Alameda St,

7   Compton, CA 90222."

8         127.   The 2015 Compton NOI lists the Compton Facility as 2.26 acres in size.

9         128.   The 2015 Compton Facility NOI lists the Compton Facility as 0%

10  impervious.

11        129.   The SWPPP for the Compton Facility indicates that the site is approximately

12  98% impervious.

13        130.   The State Board's electronic SMARTS database, lists the current Compton

14  Facility Waste Discharge Identification ("WDID") number as 4 19I004086.

15        131.   SMARTS lists the Compton Facility's coverage under the Storm Water

16  Permit as "Active."

17        132.   The 2015 Compton Facility NOI list the SIC code for the Compton Facility

18  as 3273 (Ready-Mixed Concrete).

19        133.   SIC code 3273 (Ready-Mixed Concrete) applies to the Compton Facility.

20        134.   Plaintiffs are informed and believe, and thereon allege, that SIC code 4231

21  (terminal and joint terminal maintenance facilities for motor freight transportation)

22  applies to the Compton Facility.

23        135.   Plaintiffs are informed and believe, and thereon allege, that SIC code 4212

24  (local trucking without storage) applies to the Compton Facility.

25        **2. The Fontana Facility's Storm Water Permit Coverage.**

26        136.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

27  Owner and/or Operator obtained Storm Water Permit coverage for the Fontana Facility

28  under the 1997 Permit by submitting a Notice of Intent to the State Board.

Complaint                                    23

137.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator submitted an NOI on August 31, 2015, to continue its Storm Water Permit coverage for the Fontana Facility under the 2015 Permit ("2015 Fontana NOI").

138.   Plaintiffs are informed and believe, and thereon allege, that in the 2015 Fontana NOI the Facilities Owner and/or Operator identified the owner/operator of the Fontana Facility as "Cemex Construction Materials Pacific LLC" and the Fontana Facility name and location as "Cemex Construction Materials Pacific LLC, 13220 Santa Ana Ave, Fontana CA 92337."

139.   The 2015 Fontana NOI lists the Fontana Facility as 5.5 acres in size.

140.   The 2015 Fontana NOI does not describe what percentage of the Fontana is impervious.

141.   The State Board's electronic SMARTS database, lists the current Fontana WDID number as 8 36I001911.

142.   SMARTS lists the Fontana Facility's coverage under the Storm Water Permit as "Active."

143.   The 2015 Fontana NOI lists the SIC code for the Fontana Facility as 3273 (Ready-Mixed Concrete).

144.   SIC code 3273 (Ready-Mixed Concrete) applies to the Fontana Facility.

145.   Plaintiffs are informed and believe, and thereon allege, that SIC code 4231 (terminal and joint terminal maintenance facilities for motor freight transportation) applies to the Fontana Facility.

146.   Plaintiffs are informed and believe, and thereon allege, that SIC code 4212 (local trucking without storage) applies to the Fontana Facility.

### 3. The Irvine Facility's Storm Water Permit Coverage.

147.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator obtained Storm Water Permit coverage for the Irvine Facility under the 1997 Permit by submitting a Notice of Intent to the State Board.

Complaint                                           24

148.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator submitted an NOI on August 31, 2015, to continue its Storm Water Permit coverage for the Irvine Facility under the 2015 Permit ("2015 Irvine NOI").

149.   Plaintiffs are informed and believe, and thereon allege, that in the 2015 Irvine NOI the Facilities Owner and/or Operator identified the owner/operator of the Irvine Facility as "Cemex Construction Materials Pacific LLC" and the Irvine Facility name and location as "16161 Construction Cir E, Irvine CA 92614."

150.   The 2015 Irvine NOI lists the Irvine Facility as 2.1 acres in size.

151.   The 2015 Irvine NOI does not describe what percentage of the Irvine is impervious.

152.   The State Board's electronic SMARTS database, lists the current Irvine WDID number as 8 30I012077.

153.   SMARTS lists the Irvine Facility's coverage under the Storm Water Permit as "Active."

154.   The 2015 Irvine NOI lists the SIC code for the Irvine Facility as 3273 (Ready-Mixed Concrete).

155.   SIC code 3273 (Ready-Mixed Concrete) applies to the Irvine Facility.

156.   Plaintiffs are informed and believe, and thereon allege, that SIC code 4231 (terminal and joint terminal maintenance facilities for motor freight transportation) applies to the Irvine Facility.

157.   Plaintiffs are informed and believe, and thereon allege, that SIC code 4212 (local trucking without storage) applies to the Irvine Facility.

**B.    Description of Industrial Activities at the Facilities.**

158.   Ready-mixed concrete is produced by mixing aggregate (sand, gravel, or crushed stone), cement (a fine powder), fly ash, chemical additives, and water.

159.   Plaintiffs are informed and believe, and thereon allege, that the Facilities are active concrete batch plants that produce ready-mixed concrete.

160.   Plaintiffs are informed and believe, and thereon allege, that raw materials,

Complaint                                         25

including aggregate (rock, sand, and gravel), cement, fly ash, and admixtures are delivered to and stored at the Facilities.

161. Plaintiffs are informed and believe, and thereon allege, that raw materials, including aggregate (rock, sand, and gravel), cement, fly ash, and admixtures are mixed with water to create concrete at the Facilities.

162. Plaintiffs are informed and believe, and thereon allege, that raw materials, including aggregate (rock, sand, and gravel), cement, fly ash, water, and (if applicable) admixtures are added to concrete haul trucks at the Facilities that mix the ingredients together to produce concrete that haul the concrete off site.

163. Plaintiffs are informed and believe, and thereon allege, that the industrial processes at the Facilities also include onsite vehicle and mobile equipment operating, parking, fueling, and maintenance.

164. Plaintiffs are informed and believe, and thereon allege, that the Facilities include fuel storage areas.

165. Plaintiffs are informed and believe, and thereon allege, that the Facilities include hazardous materials storage areas.

166. Plaintiffs are informed and believe, and thereon allege, that the Facilities include outdoor storage areas.

167. Plaintiffs are informed and believe, and thereon allege, that the Facilities include cement silos.

168. Plaintiffs are informed and believe, and thereon allege, that the Facilities include fly ash silos.

169. Plaintiffs are informed and believe, and thereon allege, that the Facilities include admixture storage areas.

170. Plaintiffs are informed and believe, and thereon allege, that the Facilities include truck washing areas.

171. Plaintiffs are informed and believe, and thereon allege, that the Facilities include material unloading and loading areas.

Complaint                          26

172.   Plaintiffs are informed and believe, and thereon allege, that the Facilities include a maintenance shop and/or maintenance areas.

173.   Plaintiffs are informed and believe, and thereon allege, that the activities and/or areas listed in paragraphs 158-173 are industrial activities and/or areas of industrial activity at the Facilities.

**C.    Defendant's SWPPPs and M&RPs for the Facilities.**

174.   The SWPPP and M&RP publicly available for the Compton Facility via the SMARTS database is dated May 2015, with revisions dated May 30, 2017.

175.   On or about June 5, 2017 the Facilities Owner and/or Operator uploaded a SWPPP for the Compton Facility to SMARTS database. The Compton Facility SWPPP states it was amended on May 30, 2017 to "update SWPPP to incorporate additional sample points and update map."

176.   The SWPPP and M&RP publicly available for the Fontana Facility via the SMARTS database is dated May 2015, with revisions dated January 2017.

177.   On or about June 5, 2017 the Facilities Owner and/or Operator uploaded a SWPPP for the Fontana Facility to SMARTS database. The Fontana Facility SWPPP states it was amended in January 2017 as follows: "additional discharge sample location added to capture wide drainage area discharge. 8.1.2 Additional regular sweeping implemented as result of QSE sample results."

178.   The SWPPP and M&RP publicly available for the Irvine Facility via the SMARTS database is dated May 2015, with revisions dated May 30, 2017.

179.   On or about June 5, 2017 the Facilities Owner and/or Operator uploaded a SWPPP for the Irvine Facility to SMARTS database. The Irvine Facility SWPPP states it was amended in May 30, 2017 as follows: "updates drainage areas, sample points, & map."

180.   Plaintiffs are informed and believe, and thereon allege, that the SWPPPs and M&RPs referenced in paragraphs 174-179 are the current SWPPPs and M&RPs for the Facilities. Plaintiffs refer to these SWPPPs and M&RPs jointly as the "Facilities

SWPPPs."

**D. Industrial Activities, Pollutant Sources, Pollutants, and BMPs at the Facilities.**

181.   Plaintiffs are informed and believe, and thereon allege, that the industrial activities and areas of industrial activity are pollutant sources at the Facilities.

182.   Plaintiffs are informed and believe, and thereon allege, that the industrial activities and areas at the Facilities include, but are not limited to the activities described in paragraphs 158-173.

183.   The SWPPPs for the Facilities provide brief descriptions of the areas where industrial activities are conducted at the Facilities.

184.   Plaintiffs are informed and believe, and thereon allege, that the SWPPPs for the Facilities do not include all areas of industrial activity at the Facilities.

185.   Plaintiffs are informed and believe, and thereon allege, that the SWPPPs for the Facilities do not adequately describe all industrial processes at the Facilities.

186.   Plaintiffs are informed and believe, and thereon allege, that a site map was uploaded to SMARTS on June 26, 2015 and that this map is a map of the Compton Facility ("Compton Site Map") submitted pursuant to Section II(B)(3)(a) of the 2015 Permit.

187.   Plaintiffs are informed and believe, and thereon allege, that prior to May 30, 2017 the Compton Facility SWPPP included the Compton Site Map but did not include any other site map of the Compton Facility.

188.   Plaintiffs are informed and believe, and thereon allege, that on or about May 30, 2017 the Compton Facility SWPPP was amended to include a revised site map ("Revised Compton Site Map").

189.   Plaintiffs are informed and believe, and thereon allege, that since May 30, 2017 the Compton Facility SWPPP includes the Compton Site Map and the Revised Compton Site Map but does not include any other site map of the Compton Facility.

190.   Plaintiffs are informed and believe, and thereon allege, that a site map was

uploaded to SMARTS on June 23, 2015 and that this map is a map of the Irvine Facility ("Irvine Site Map") submitted pursuant to Section II(B)(3)(a) of the 2015 Permit.

191.   Plaintiffs are informed and believe, and thereon allege, that prior to May 30, 2017 the Irvine Facility SWPPP included the Irvine Site Map but did not include any other site map of the Irvine Facility.

192.   Plaintiffs are informed and believe, and thereon allege, that on or about May 30, 2017 the Irvine Facility SWPPP was amended to include a revised site map ("Revised Irvine Site Map").

193.   Plaintiffs are informed and believe, and thereon allege, that since May 30, 2017 the Irvine Facility SWPPP includes the Irvine Site Map and the Revised Irvine Site Map but does not include any other site map of the Irvine Facility.

194.   Plaintiffs are informed and believe, and thereon allege, that a site map was uploaded to SMARTS on June 22, 2015 and that this map is a map of the Fontana Facility ("Fontana Site Map") submitted pursuant to Section II(B)(3)(a) of the 2015 Permit.

195.   Plaintiffs are informed and believe, and thereon allege, that prior to January 2017 the Fontana Facility SWPPP included the Fontana Site Map but did not include any other site map of the Fontana Facility.

196.   Plaintiffs are informed and believe, and thereon allege, that in January 2017 the Fontana Facility SWPPP was amended to include a revised site map ("Revised Fontana Site Map").

197.   Plaintiffs are informed and believe, and thereon allege, that since January 2017 the Fontana Facility SWPPP includes the Fontana Site Map and the Revised Fontana Site Map but does not include any other site map of the Fontana Facility.

198.   Plaintiffs are informed and believe, and thereon allege, that the Compton Site Map does not identify all areas of industrial activity at the Compton Facility.

199.   Plaintiffs are informed and believe, and thereon allege, that the Revised Compton Site Map does not identify all areas of industrial activity at the Compton

1  Facility.

2       200.   Plaintiffs are informed and believe, and thereon allege, that the Irvine Site

3  Map does not identify all areas of industrial activity at the Irvine Facility.

4       201.   Plaintiffs are informed and believe, and thereon allege, that the Revised

5  Irvine Site Map does not identify all areas of industrial activity at the Irvine Facility.

6       202.   Plaintiffs are informed and believe, and thereon allege, that the Fontana Site

7  Map does not identify all areas of industrial activity at the Fontana Facility.

8       203.   Plaintiffs are informed and believe, and thereon allege, that the Revised

9  Fontana Site Map does not identify all areas of industrial activity at the Fontana Facility.

10      204.   Plaintiffs are informed and believe, and thereon allege, that the Compton

11 Site Map does not identify all discharge locations at the Compton Facility.

12      205.   Plaintiffs are informed and believe, and thereon allege, that the Revised

13 Compton Site Map does not identify all discharge locations at the Compton Facility.

14      206.   Plaintiffs are informed and believe, and thereon allege, that the Irvine Site

15 Map does not identify all discharge locations at the Irvine Facility.

16      207.   Plaintiffs are informed and believe, and thereon allege, that the Revised

17 Irvine Site Map does not identify all discharge locations at the Irvine Facility.

18      208.   Plaintiffs are informed and believe, and thereon allege, that the Fontana Site

19 Map does not identify all discharge locations at the Fontana Facility.

20      209.   Plaintiffs are informed and believe, and thereon allege, that the Revised

21 Fontana Site Map does not adequately identify all discharge locations at the Fontana

22 Facility.

23      210.   Plaintiffs are informed and believe, and thereon allege, that the Compton

24 Site Map does not include locations and descriptions of structural control measures that

25 affect industrial storm water discharges at the Compton Facility.

26      211.   Plaintiffs are informed and believe, and thereon allege, that the Revised

27 Compton Site Map does not include locations and descriptions of structural control

28 measures that affect industrial storm water discharges at the Compton Facility.

Complaint                          30

212.   Plaintiffs are informed and believe, and thereon allege, that the Irvine Site Map does not include locations and descriptions of structural control measures that affect industrial storm water discharges at the Irvine Facility.

213.   Plaintiffs are informed and believe, and thereon allege, that the Revised Irvine Site Map does not include locations and descriptions of structural control measures that affect industrial storm water discharges at the Irvine Facility.

214.   Plaintiffs are informed and believe, and thereon allege, that the Fontana Site Map does not include locations and descriptions of structural control measures that affect industrial storm water discharges at the Fontana Facility.

215.   Plaintiffs are informed and believe, and thereon allege, that the Revised Fontana Site Map does not include locations and descriptions of structural control measures that affect industrial storm water discharges at the Fontana Facility.

216.   Plaintiffs are informed and believe, and thereon allege, that the Compton Site Map does not identify locations where materials are directly exposed to precipitation at the Compton Facility.

217.   Plaintiffs are informed and believe, and thereon allege, that the Revised Compton Site Map does not identify locations where materials are directly exposed to precipitation at the Compton Facility.

218.   Plaintiffs are informed and believe, and thereon allege, that the Irvine Site Map does not identify locations where materials are directly exposed to precipitation at the Irvine Facility.

219.   Plaintiffs are informed and believe, and thereon allege, that the Revised Irvine Site Map does not identify locations where materials are directly exposed to precipitation at the Irvine Facility.

220.   Plaintiffs are informed and believe, and thereon allege, that the Fontana Site Map does not identify locations where materials are directly exposed to precipitation at the Fontana Facility.

221.   Plaintiffs are informed and believe, and thereon allege, that the Revised

Complaint                                    31

Fontana Site Map does not identify locations where materials are directly exposed to precipitation at the Fontana Facility.

222.   Plaintiffs are informed and believe, and thereon allege, that the Compton Site Map does not include notes, legends, and other data appropriate to ensure the site map is clear, legible, and understandable.

223.   Plaintiffs are informed and believe, and thereon allege, that the Revised Compton Site Map does not include notes, legends, and other data appropriate to ensure the site map is clear, legible, and understandable.

224.   Plaintiffs are informed and believe, and thereon allege, that the Irvine Site Map does not include notes, legends, and other data appropriate to ensure the site map is clear, legible, and understandable.

225.   Plaintiffs are informed and believe, and thereon allege, that the Revised Irvine Site Map does not include notes, legends, and other data appropriate to ensure the site map is clear, legible, and understandable.

226.   Plaintiffs are informed and believe, and thereon allege, that the Fontana Site Map does not include notes, legends, and other data appropriate to ensure the site map is clear, legible, and understandable.

227.   Plaintiffs are informed and believe, and thereon allege, that the Revised Fontana Site Map does not include notes, legends, and other data appropriate to ensure the site map is clear, legible, and understandable.

228.   Plaintiffs are informed and believe, and thereon allege, that industrial activities occur throughout the Facilities outdoors without adequate cover to prevent storm water exposure to pollutant sources.

229.   Plaintiffs are informed and believe, and thereon allege, that industrial activities occur throughout the Facilities outdoors without secondary containment or other adequate treatment measures to prevent polluted storm water from discharging from the Facilities.

230.   Plaintiffs are informed and believe, and thereon allege, that because the

Facilities SWPPPs fail to describe all of the industrial activities, the Facilities SWPPPs also fail to describe all of the significant materials and processes that are related to the industrial activities at the Facilities.

231.   Plaintiffs are informed and believe, and thereon allege, that because all significant materials have not been identified, the Facilities SWPPPs fail to describe the locations where the materials are stored, received, shipped, and handled, or the typical quantities and frequency of significant materials at the Facilities.

232.   Section 5.0, Table 1, Section 6.8, and Table 3 of the Facilities SWPPPs identify potential pollutants associated with the industrial activities at the Facilities.

233.   Plaintiffs are informed and believe, and thereon allege, that the Facilities SWPPPs fail to describe all of the pollutants associated with the industrial activities at the Facilities.

234.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator has failed and continues to fail to adequately assess pollutants associated with potential pollutant sources at the Facilities.

235.   Plaintiffs are informed and believe, and thereon allege, that the Facilities SWPPPs do not include an adequate assessment of pollutants associated with potential pollutant sources at the Facilities.

236.   Plaintiffs are informed and believe, and thereon allege, that pollutants associated with industrial activities and areas the Facilities include, but are not limited to: pH affecting substances; metals, such as iron and aluminum; toxic metals, such as lead, zinc, cadmium, chromium, copper, arsenic, and mercury; chemical oxygen demand ("COD"); BOD; TSS; N+N; SC; benzene; gasoline and diesel fuels; fuel additives; coolants; antifreeze; total kjehldahl nitrogen ("TKN"); trash; and O&G.

237.   Section 6.8 and Table 3 of the Facilities SWPPPs identify the BMPs for the areas of industrial activity at the Facilities.

238.   Section 8.0, Table 5, and Table 6 of the Facilities SWPPPs list the BMPs at the Facilities.

239.   Section 7.0 of the Facilities SWPPPs includes an "Assessment of Potential Pollutant Sources" at the Facilities.

240.   Plaintiffs are informed and believe, and thereon allege, that the Facilities SWPPPs fail to describe adequate BMPs to reduce or prevent pollutants in the discharges from the Facilities.

241.   Plaintiffs are informed and believe, and thereon allege, that without properly identifying all industrial activities at the Facilities in the SWPPPs, the Facilities Owner and/or Operator cannot and has not developed all appropriate BMPs.

242.   Plaintiffs are informed and believe, and thereon allege, that without properly identifying all industrial activities at the Facilities in the SWPPP, the Facilities Owner and/or Operator cannot and has not implemented all appropriate BMPs.

243.   Plaintiffs are informed and believe, and thereon allege, that without properly identifying all significant materials at the Facilities in the SWPPP, the Facilities Owner and/or Operator cannot and has not developed all appropriate BMPs.

244.   Plaintiffs are informed and believe, and thereon allege, that without properly identifying all significant materials at the Facilities in the SWPPP, the Facilities Owner and/or Operator cannot and has not implemented all appropriate BMPs.

245.   Plaintiffs are informed and believe, and thereon allege, that the Facilities SWPPPs do not include an adequate assessment of potential pollutant sources at the Facilities.

246.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator has failed and continues to fail to assess the BMPs at the Facilities corresponding to potential pollutant sources and associated pollutants.

247.   Plaintiffs are informed and believe, and thereon allege, that the Facilities SWPPPs do not include an adequate assessment of the BMPs at the Facilities corresponding to potential pollutant sources and associated pollutants.

248.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator has failed and continues to fail to assess potential pollutant

1   sources at the Facilities.

2   249.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

3   SWPPPs do not include an adequate description of the BMPs at the Facilities.

4   250.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

5   Owner and/or Operator has failed and continues to fail to analyze the effectiveness of the

6   BMPs at the Facilities.

7   251.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

8   SWPPPs do not include an adequate analysis of the effectiveness of the BMPs at the

9   Facilities.

10   252.   Plaintiffs are informed and believe, and thereon allege, that storm water

11   sampling at the Facilities demonstrates that the Facilities storm water discharges from the

12   Facilities contain concentrations of pollutants above EPA Benchmarks, including, but not

13   limited to: iron, pH, N+N, and TSS.

14   253.   Plaintiffs are informed and believe, and thereon allege, that the exceedances

15   of EPA Benchmarks demonstrate that the Facilities Owner and/or Operator failed and

16   continues to fail to develop BMPs to prevent the exposure of pollutants to storm water,

17   and to prevent discharges of polluted storm water from the Facilities.

18   254.   Plaintiffs are informed and believe, and thereon allege, that the exceedances

19   of EPA Benchmarks demonstrate that the Facilities Owner and/or Operator failed and

20   continues to fail to implement BMPs to prevent the exposure of pollutants to storm water,

21   and to prevent discharges of polluted storm water from the Facilities.

22   255.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

23   Owner and/or Operator has failed and continues to fail to adequately revise the Facilities

24   SWPPPs.

25   **E.   Discharge Locations at the Facility.**

26   **1.   Discharge Locations the Compton Facility.**

27   256.   Prior to May 30, 2017 the Facilities Owner and/or Operator stated in the

28   Compton Facility SWPPP that the Compton Facility has two drainage areas but then

Complaint                                35

1    describes four drainage areas with two potential discharge locations.

2         257.   Since May 30, 2017 the Facilities Owner and/or Operator states in the

3    Compton Facility SWPPP that the Compton Facility has two drainage areas but then

4    describes five drainage areas and three potential discharge locations.

5         258.   Prior to May 30, 2017 the Facilities Owner and/or Operator stated in the

6    Compton Facility SWPPP that discharges from a drainage area labeled "DA1" reportedly

7    "includes the northwestern portion of the site," "[s]torm water that falls in this area flows

8    to and discharges from Outfall 1 ('OF1')," and samples collected from OF1 are taken at

9    "SP-1."

10        259.   Since May 30, 2017 the Facilities Owner and/or Operator states in the

11   Compton Facility SWPPP that discharges from a drainage area labeled "DA-1" includes

12   "the west central portion of the site," "[s]torm water that falls in this area … flows to and

13   discharges from Outfall 1 (OF1)," and samples collected from OF1 are taken at "SP-1."

14        260.   Prior to May 30, 2017 the Facilities Owner and/or Operator stated in the

15   Compton Facility SWPPP that discharges from a drainage area labeled "DA2" reportedly

16   "includes the southwestern portion of the site," "[s]torm water that falls in this area flows

17   to and discharges from Outfall 2 ('OF2')," and samples collected from OF2 are taken at

18   "SP-2."

19        261.   Since May 30, 2017 the Facilities Owner and/or Operator states in the

20   Compton Facility SWPPP that discharges from a drainage area labeled "DA-2" includes

21   "the an western and northern portion of the site," "[s]torm water that falls in this area …

22   flows to and discharges from Outfall 2 (OF2)," and samples collected from OF2 are taken

23   at "SP-2."

24        262.   Since May 30, 2017 the Facilities Owner and/or Operator states in the

25   Compton Facility SWPPP that discharges from a drainage area labeled "DA-3" includes

26   "the southern portion of the site," "[s]torm water that falls in this area … flows to and

27   discharges from Outfall 3 (OF23)," and samples collected from OF3 are taken at "SP-3."

28        263.   Plaintiffs are informed and believe, and thereon allege, the Compton Facility

1  SWPPP is internally inconsistent. For example:

2          a.      Prior to May 30, 2017 the Compton Facility SWPPP states that the

3  Facility consists of two drainage areas, but also identifies "DA3" and "DA4" that "are on

4  the eastern portion of the site and drain to recycling ponds."

5          b.      Since May 30, 2017, the Compton Facility SWPPP states that the

6  Facility consists of two drainage areas, but also identifies "DA-3", "DA-4", and "DA-5".

7  "DA-3" is described above, while "DA-4" and "DA-5" are described as "on the eastern

8  portion of the site and drain[ing] to sumps and recycling ponds."

9          c.      Since May 30, 2017 the Compton Facility SWPPP states only "Outfall

10  1 and Outfall 2 will be sampled in accordance with the IGP"

11      264.   No sizing information is provided demonstrating the volume of the ponds or

12  sumps referred to in the Compton Facility SWPPP.

13      265.   Plaintiffs are informed and believe, and thereon allege, that prior to May 30,

14  2017 there were at least two (2) additional discharge locations at the Compton Facility

15  that the Facilities Owner and/or Operator had not identified in the Compton Facility

16  SWPPP. The first additional discharge location was located at the third driveway that

17  leads to Alameda Street at the Facility, which is not labeled on the site map included in

18  the Compton Facility SWPPP. The second additional discharge location was located at

19  the driveway at the Compton Facility that leads to East Banning Street, which is also not

20  labeled on the Compton Site Map included in the Compton Facility SWPPP.

21      266.   Plaintiffs are informed and believe, and thereon allege, that since May 30,

22  2017 there is at least one (1) additional discharge locations at the Compton Facility that

23  the Facilities Owner and/or Operator had not identified in the Compton Facility SWPPP.

24  The additional discharge location is located at the driveway at the Facility that leads to

25  East Banning Street, which is also not labeled on the Compton Site Map or the Revised

26  Compton Site Map included in the Compton Facility SWPPP.

27      267.   Plaintiffs are informed and believe, and thereon allege, that there are at least

28  four (4) discharge locations at the Compton Facility.

## 2. Discharge Locations at the Fontana Facility.

268.    The Facilities Owner and/or Operator states in the Fontana Facility SWPPP that the Fontana Facility consists of one drainage area, and that all storm water flows to the south of the Fontana Facility.

269.    The Facilities Owner and/or Operator states in the Fontana Facility SWPPP that there is one "drainage point" at the Fontana Facility.

270.    Prior to January 2017, the Fontana Facility SWPPP identified a "Sample Point" at the driveway to Jasmine Street. Since January 2017 the Fontana Facility SWPPP still identifies a "Sample Point" at the driveway to Jasmine Street, but it also identifies "S-1" and "S-2". "S-2" appears to correspond to the "Sample Point".

271.    Plaintiffs are informed and believe, and thereon allege, that there are at least two discharge locations at the Fontana Facility. The Fontana Facility is located at the portion of Santa Ana Avenue that curves and becomes Jasmine Street. There is one driveway onto Santa Ana Avenue at the eastern side of the Fontana Facility, and another driveway at the curvature of the street at the western side of the Fontana Facility onto Jasmine Street. Information available to Waterkeeper, including direct observations, indicates that storm water discharges from both driveways.

272.    Plaintiffs are informed and believe, and thereon allege, that there are at least two (2) discharge locations at the Fontana Facility.

## 3. Discharge Locations at the Irvine Facility.

273.    Prior to May 30, 2017, the Facilities Owner and/or Operator stated in the Irvine Facility SWPPP that the Irvine Facility consists of two drainage areas: Drainage Area 1 ("DA1") and Drainage Area 2 ("DA2").

274.    Since May 30, 2017, the Facilities Owner and/or Operator states in the Irvine Facility SWPPP that the Irvine Facility consists of four drainage areas: Drainage Area 1 ("DA-1"), Drainage Area 2 ("DA-2"), Drainage Area 3 ("DA-3"), and Drainage Area 4 ("DA-4").

275.    The Facilities Owner and/or Operator states in the Irvine Facility SWPPP

1   that DA1 is located on the west side of the Facility, and storm water on this portion

2   "flows to the recycle ponds where storm water is used in concrete production."

3       276.   Prior to May 30, 2017 the Facilities Owner and/or Operator stated in the

4   Irvine Facility SWPPP that DA2 is located on the east side of the Irvine Facility, storm

5   water on this portion "flows to the northeast driveway," and "storm water sample

6   collections is identified at S-1 [on the Irvine Site Map] … [and] is located at the northeast

7   driveway."

8       277.   Since May 30, 2017 the Facilities Owner and/or Operator stated in the Irvine

9   Facility SWPPP that DA-2 is located on the south east side of the Irvine Facility, storm

10  water on this portion "flows to the southeast driveway," and storm water samples from

11  this drainage area are collected at "SA-2."

12      278.   Since May 30, 2017 the Facilities Owner and/or Operator stated in the Irvine

13  Facility SWPPP that DA-3 is located on the north east side of the Irvine Facility, storm

14  water on this portion "flows to the northeast driveway," and storm water samples from

15  this drainage area are collected at "SA-1."

16      279.   Since May 30, 2017 the Facilities Owner and/or Operator stated in the Irvine

17  Facility SWPPP that DA-4 is located on the west side of the Irvine Facility, storm water

18  on this portion "flows to the west driveway," and storm water samples from this drainage

19  area are collected at "SA-3."

20      280.   Prior to May 30, 2017, the Facilities Owner and/or Operator stated in the

21  Irvine Facility SWPPP that storm water discharges from the northeast driveway onto

22  Construction Circle East only, and that is where samples would be collected.

23      281.   Since May 30, 2017 the Facilities Owner and/or Operator states in the Irvine

24  Facility SWPPP that samples will be collected at the southeast, northeast, and west

25  driveways (SA-2, SA-1, and SA-3, respectively).

26      282.   Despite the May 30, 2017 amendments to the Irvine Facility SWPPP, the

27  Irvine Facility SWPPP is internally inconsistent and fails to adequately identify and

28  describe the Irvine Facility's drainage areas and discharge locations. For example:

Complaint                                    39

a.      the Irvine Facility SWPPP refers to a single "drainage point" (the "northeast driveway area") at the Irvine Facilty, and

b.      the Irvine Facility SWPPP states that the Irvine Facility is composed of "two drainage areas".

283.   Plaintiffs are informed and believe, and thereon allege, that prior to May 30, 2017 there were at least three (3) discharge locations at the Irvine Facility in addition to the one (1) identified in the Irvine Facility SWPPP: (1) the northwest driveway onto Construction Circle West, (2) the southwest driveway onto Construction Circle West, and (3) the southeast driveway onto Construction Circle East.

284.   Plaintiffs are informed and believe, and thereon allege, that since May 30, 2017 there is at least one (1) discharge location at the Irvine Facility in addition to the three identified in the Irvine Facility SWPPP: the northwest driveway onto Construction Circle West.

285.   The retention capacity of the recycle ponds is not provided in the Irvine Facility SWPPP.

286.   Plaintiffs are informed and believe, and thereon allege, that there are least four (4) discharge locations at the Irvine Facility.

**F.    The Discharges from the Facilities to the Receiving Waters.**

287.   Discharges from the Compton Facility flow into the local municipal storm drain system.

288.   Plaintiffs are informed and believe, and thereon allege, that polluted storm water from the Compton Facility discharges from the local municipal storm drain system into Compton Creek.

289.   Plaintiffs are informed and believe, and thereon allege, that polluted storm water from the Compton Facility discharges from Compton Creek to Reach 1 of the Los Angeles River, and subsequently to the Los Angeles Estuary, and then to San Pedro Bay and the Pacific Ocean.

290.   Discharges from the Irvine Facility flow into the City of Irvine storm drain

Complaint                                40

1   system.

2       291.   Plaintiffs are informed and believe, and thereon allege, that the polluted

3   storm water from the Irvine Facility discharges from the City of Irvine storm drain

4   system to Peters Canyon Channel.

5       292.   Plaintiffs are informed and believe, and thereon allege, that the polluted

6   storm water from the Irvine Facility flows from Peters Canyon Channel to Reach 1 of

7   San Diego Creek, and subsequently to Upper Newport Bay and Lower Newport Bay, and

8   ultimately the Pacific Ocean at the Newport Beach.

9       293.   Plaintiffs are informed and believe, and thereon allege, that the polluted

10  storm water from the Fontana Facility discharges from the City of Fontana storm drain

11  system to the San Sevaine Channel.

12      294.   Plaintiffs are informed and believe, and thereon allege, that the polluted

13  storm water from the Fontana Facility discharges from the San Sevaine Channel to Reach

14  3 of the Santa Ana River, and then subsequently to Reach 2 of the Santa Ana River, then

15  Reach 1 of the Santa Ana River, and finally from the Santa Ana River to the Pacific

16  Ocean at Huntington Beach State Park.

17      295.   Plaintiffs are informed and believe, and thereon allege, that each of the

18  receiving waters described in paragraphs 288, 289, and 291-294 is a water of the United

19  States.

20          **G.    Non-Storm Water Discharges.**

21      296.   Plaintiffs are informed and believe, and thereon allege, that unauthorized

22  non-storm water discharges occur at the Facilities due to inadequate BMP development

23  and/or implementation necessary to prevent these discharges.

24      297.   Plaintiffs are informed and believe, and thereon allege, that unauthorized

25  non-storm water discharges occur at the Compton Facility as a result of truck washing

26  and cleaning activities at the Compton Facility.

27      298.   Plaintiffs are informed and believe, and thereon allege, that unauthorized

28  non-storm water discharges occur at the Irvine Facility as a result of truck washing and

Complaint                                    41

1    cleaning activities at the Irvine Facility.

2       299.   Plaintiffs are informed and believe, and thereon allege, that unauthorized

3    non-storm water discharges occur at the Fontana Facility as a result of truck washing and

4    cleaning activities at the Fontana Facility.

5       300.   The Facilities Owner and/or Operator conduct the activities described at

6    paragraphs 297-299 without adequate BMPs to prevent related non-storm water

7    discharges.

8       301.   Non-storm water discharges resulting from the activities described at

9    paragraphs 297-299 are not from sources that are listed among the authorized non-storm

10    water discharges in Special Conditions and are always prohibited under the Storm Water

11    Permit.

12       **H.    Defendant's Sampling, Monitoring, and Reporting.**

13       302.   Section 10.0 of the Facilities SWPPPs include the "Storm Water Monitoring

14    Implementation Plan (MIP)" for the Facilities.

15       303.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

16    Owner and/or Operator has failed and continues to fail to conduct all required quarterly

17    and/or monthly visual observations of unauthorized discharges at the Facilities.

18       304.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

19    Owner and/or Operator has failed to conduct, and/or provide the records required by the

20    Storm Water Permit for, monthly visual observations of storm water discharges at the

21    Facilities.

22       305.   Section 10.4 of the Facilities SWPPPs constitutes the "Sampling Program"

23    for the Facilities.

24       306.   Table 7 of the Facilities SWPPPs identify O&G, TSS, iron, and pH as the

25    "sampling requirements for all outfalls" at the Facilities.

26       307.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

27    SWPPPs fail to require that the Facilities Owner and/or Operator analyze storm water

28    discharges from the Facilities for all required parameters by failing to specify that storm

Complaint                                   42

water discharges will be analyzed for, at a minimum, aluminum, copper, COD, BOD, N+N, and zinc.

308. Plaintiffs are informed and believe, and thereon allege, that the M&RPs for the Facilities fail to require that the Facilities Owner and/or Operator collect storm water samples from all discharge locations at the Facilities from all storm water discharges occurring during qualifying storm events.

309. Via a Public Records Act request to the Los Angeles Regional Board, Plaintiffs obtained an Annual Report for the Compton Facility dated June 6, 2012.

310. Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 6, 2012, obtained from the Los Angeles Regional Board is the 2011/2012 Annual Report for the Compton Facility.

311. Via a Public Records Act request to the Los Angeles Regional Board, Plaintiffs obtained an Annual Report for the Compton Facility dated June 7, 2013.

312. Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 7, 2013, obtained from the Los Angeles Regional Board is the 2012/2013 Annual Report for the Compton Facility.

313. Via the SMARTS database, Plaintiffs obtained an Annual Report for the Compton Facility dated June 6, 2014.

314. Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 6, 2014, obtained from the SMARTS database is the 2013/2014 Annual Report for the Compton Facility.

315. Via the SMARTS database, Plaintiffs obtained an Annual Report for the Compton Facility dated June 16, 2015.

316. Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 16, 2015, obtained from the SMARTS database is the 2014/2015 Annual Report for the Compton Facility.

317. Via the SMARTS database, Plaintiffs obtained an Annual Report for the Compton Facility dated July 6, 2016.

318.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated July 6, 2016, obtained from the SMARTS database is the 2015/2016 Annual Report for the Compton Facility.

319.   Via a Public Records Act request to the Santa Ana Regional Board, Plaintiffs obtained an Annual Report for the Fontana Facility dated June 6, 2012.

320.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 6, 2012, obtained from the Santa Ana Regional Board is the 2011/2012 Annual Report for the Fontana Facility.

321.   Via a Public Records Act request to the Santa Ana Regional Board, Plaintiffs obtained an Annual Report for the Fontana Facility dated June 7, 2013.

322.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 7, 2013, obtained from the Santa Ana Regional Board is the 2012/2013 Annual Report for the Fontana Facility.

323.   Via a Public Records Act request to the Santa Ana Regional Board, Plaintiffs obtained an Annual Report for the Fontana Facility dated June 5, 2014.

324.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 5, 2014, obtained from the Santa Ana Regional Board is the 2013/2014 Annual Report for the Fontana Facility.

325.   Via a Public Records Act request to the Santa Ana Regional Board, Plaintiffs obtained an Annual Report for the Fontana Facility dated May 29, 2015.

326.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated May 29, 2015, obtained from the Santa Ana Regional Board is the 2014/2015 Annual Report for the Fontana Facility.

327.   Via the SMARTS database, Plaintiffs obtained an Annual Report for the Irvine Facility dated July 6, 2016.

328.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated July 6, 2016, obtained from the SMARTS database is the 2015/2016 Annual Report for the Irvine Facility.

329.   Via a Public Records Act request to the Santa Ana Regional Board, Plaintiffs obtained an Annual Report for the Fontana Facility dated June 6, 2012.

330.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 6, 2012, obtained from the Santa Ana Regional Board is the 2011/2012 Annual Report for the Fontana Facility.

331.   Via a Public Records Act request to the Santa Ana Regional Board, Plaintiffs obtained an Annual Report for the Fontana Facility dated June 7, 2013.

332.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 7, 2013, obtained from the Santa Ana Regional Board is the 2012/2013 Annual Report for the Fontana Facility.

333.   Via a Public Records Act request to the Santa Ana Regional Board, Plaintiffs obtained an Annual Report for the Fontana Facility dated June 4, 2014.

334.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 4, 2014, obtained from the Santa Ana Regional Board is the 2013/2014 Annual Report for the Fontana Facility.

335.   Via a Public Records Act request to the Santa Ana Regional Board, Plaintiffs obtained an Annual Report for the Fontana Facility dated June 3, 2015.

336.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated June 3, 2015, obtained from the Santa Ana Regional Board is the 2014/2015 Annual Report for the Fontana Facility.

337.   Via the SMARTS database, Plaintiffs obtained an Annual Report for the Fontana Facility dated July 6, 2016.

338.   Plaintiffs are informed and believe, and thereon allege, that the Annual Report dated July 6, 2016, obtained from the SMARTS database is the 2015/2016 Annual Report for the Fontana Facility.

2011/2012 Annual Reports

339.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual

observations of unauthorized non-storm water discharges for each of its drainage areas in the 2011/2012 Annual Report for the Compton Facility.

340.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2011/2012 Annual Report for the Compton Facility.

341.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which drainage areas were observed in the 2011/2012 Annual Report for the Compton Facility.

342.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2011/2012 Annual Report for the Compton Facility.

343.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2011/2012 Annual Report for the Compton Facility.

344.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2011/2012 Annual Report for the Compton Facility.

345.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2011/2012 Annual Report for the Compton Facility.

346.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2011/2012 Annual Report for the Compton Facility.

347.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2011/2012 Annual Report for the Compton Facility.

348.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Compton Facility was in compliance with the Storm Water Permit in its 2011/2012 Annual Report.

349.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report for the Compton Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

350.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report for the Compton Facility was false because the Facilities Owner and/or Operator had not revised the Compton Facility SWPPP to achieve compliance with the Storm Water Permit.

351.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report Compton Facility was false because the Facilities Owner and/or Operator had not revised the Compton Facility M&RP to achieve compliance with the Storm Water Permit.

352.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Compton

Complaint                                    47

Facility with the Storm Water Permit in its 2011/2012 Annual Report.

353.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2011/2012 Annual Report for the Compton Facility.

354.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2011/2012 Annual Report for the Fontana Facility.

355.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2011/2012 Annual Report for the Fontana Facility.

356.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which drainage areas were observed in the 2011/2012 Annual Report for the Fontana Facility.

357.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2011/2012 Annual Report for the Fontana Facility.

358.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2011/2012 Annual Report for the Fontana Facility.

359.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of

1    pollutants at observed discharge points in the 2011/2012 Annual Report for the Fontana
2    Facility.

3        360.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
4    Owner and/or Operator failed to include the required evaluation of the presence of any
5    floating and suspended material, O&G, discolorations, turbidity, odor, and source of
6    pollutants at observed discharge points in the 2011/2012 Annual Report for the Fontana
7    Facility.

8        361.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
9    Owner and/or Operator failed to include the required summary of the presence of any
10   floating and suspended material, O&G, discolorations, turbidity, odor, and source of
11   pollutants at unobserved discharge points in the 2011/2012 Annual Report for the
12   Fontana Facility.

13       362.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
14   Owner and/or Operator failed to include the required evaluation of the presence of any
15   floating and suspended material, O&G, discolorations, turbidity, odor, and source of
16   pollutants at unobserved discharge points in the 2011/2012 Annual Report for the
17   Fontana Facility.

18       363.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
19   Owner and/or Operator certified that the Fontana Facility was in compliance with the
20   Storm Water Permit in its 2011/2012 Annual Report.

21       364.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
22   Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report for
23   the Fontana Facility was false because it failed to comply with each of the requirements
24   of Section B(14) of the 1997 Permit.

25       365.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
26   Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report for
27   the Fontana Facility was false because the Facilities Owner and/or Operator had not
28   revised the Fontana Facility SWPPP to achieve compliance with the Storm Water Permit.

Complaint                                  49

366.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report Fontana Facility was false because the Facilities Owner and/or Operator had not revised the Fontana Facility M&RP to achieve compliance with the Storm Water Permit.

367.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Fontana Facility with the Storm Water Permit in its 2011/2012 Annual Report.

368.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2011/2012 Annual Report for the Fontana Facility.

369.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2011/2012 Annual Report for the Irvine Facility.

370.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2011/2012 Annual Report for the Irvine Facility.

371.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which drainage areas were observed in the 2011/2012 Annual Report for the Irvine Facility.

372.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2011/2012 Annual Report for the Irvine Facility.

373.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

Complaint                                    50

Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2011/2012 Annual Report for the Irvine Facility.

374.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2011/2012 Annual Report for the Irvine Facility.

375.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2011/2012 Annual Report for the Irvine Facility.

376.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2011/2012 Annual Report for the Irvine Facility.

377.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2011/2012 Annual Report for the Irvine Facility.

378.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Irvine Facility was in compliance with the Storm Water Permit in its 2011/2012 Annual Report.

379.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report for

1   the Irvine Facility was false because it failed to comply with each of the requirements of

2   Section B(14) of the 1997 Permit.

3        380.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

4   Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report for

5   the Irvine Facility was false because the Facilities Owner and/or Operator had not revised

6   the Irvine Facility SWPPP to achieve compliance with the Storm Water Permit.

7        381.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

8   Owner and/or Operator's certification of compliance in the 2011/2012 Annual Report

9   Irvine Facility was false because the Facilities Owner and/or Operator had not revised the

10  Irvine Facility M&RP to achieve compliance with the Storm Water Permit.

11       382.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

12  Owner and/or Operator failed to describe instances of noncompliance at the Irvine

13  Facility with the Storm Water Permit in its 2011/2012 Annual Report.

14       383.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

15  Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence

16  of its noncompliance with the Storm Water Permit in its 2011/2012 Annual Report for the

17  Irvine Facility.

18       2012/2013 Annual Reports

19       384.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner

20  and/or Operator failed to include the required summary of its quarterly visual

21  observations of unauthorized non-storm water discharges for each of its drainage areas in

22  the 2012/2013 Annual Report for the Compton Facility.

23       385.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

24  Owner and/or Operator failed to include the required evaluation of its quarterly visual

25  observations of unauthorized non-storm water discharges for each of its drainage areas in

26  the 2012/2013 Annual Report for the Compton Facility.

27       386.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

28  Owner and/or Operator failed to indicate the location of non-storm water visual

Complaint                                    52

observations to document which drainage areas were observed in the 2012/2013 Annual Report for the Compton Facility.

387.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2012/2013 Annual Report for the Compton Facility.

388.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2012/2013 Annual Report for the Compton Facility.

389.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2012/2013 Annual Report for the Compton Facility.

390.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2012/2013 Annual Report for the Compton Facility.

391.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2012/2013 Annual Report for the Compton Facility.

392.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of

pollutants at unobserved discharge points in the 2012/2013 Annual Report for the Compton Facility.

393.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Compton Facility was in compliance with the Storm Water Permit in its 2012/2013 Annual Report.

394.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Compton Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

395.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Compton Facility was false because the Facilities Owner and/or Operator had not revised the Compton Facility SWPPP to achieve compliance with the Storm Water Permit.

396.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report Compton Facility was false because the Facilities Owner and/or Operator had not revised the Compton Facility M&RP to achieve compliance with the Storm Water Permit.

397.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Compton Facility with the Storm Water Permit in its 2012/2013 Annual Report.

398.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2012/2013 Annual Report for the Compton Facility.

399.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in

Complaint                                        54

1    the 2012/2013 Annual Report for the Fontana Facility.

2         400.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
3    Owner and/or Operator failed to include the required evaluation of its quarterly visual
4    observations of unauthorized non-storm water discharges for each of its drainage areas in
5    the 2012/2013 Annual Report for the Fontana Facility.

6         401.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
7    Owner and/or Operator failed to indicate the location of non-storm water visual
8    observations to document which drainage areas were observed in the 2012/2013 Annual
9    Report for the Fontana Facility.

10        402.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
11   Owner and/or Operator failed to include the required summary of its monthly visual
12   observations of storm water discharges for each of its discharge points in the 2012/2013
13   Annual Report for the Fontana Facility.

14        403.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
15   Owner and/or Operator failed to include the required evaluation of its monthly visual
16   observations of storm water discharges for each of its discharge points in the 2012/2013
17   Annual Report for the Fontana Facility.

18        404.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
19   Owner and/or Operator failed to include the required summary of the presence of any
20   floating and suspended material, O&G, discolorations, turbidity, odor, and source of
21   pollutants at observed discharge points in the 2012/2013 Annual Report for the Fontana
22   Facility.

23        405.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
24   Owner and/or Operator failed to include the required evaluation of the presence of any
25   floating and suspended material, O&G, discolorations, turbidity, odor, and source of
26   pollutants at observed discharge points in the 2012/2013 Annual Report for the Fontana
27   Facility.

28        406.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

Complaint                                55

Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2012/2013 Annual Report for the Fontana Facility.

407.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2012/2013 Annual Report for the Fontana Facility.

408.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Fontana Facility was in compliance with the Storm Water Permit in its 2012/2013 Annual Report.

409.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Fontana Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

410.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Fontana Facility was false because the Facilities Owner and/or Operator had not revised the Fontana Facility SWPPP to achieve compliance with the Storm Water Permit.

411.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report Fontana Facility was false because the Facilities Owner and/or Operator had not revised the Fontana Facility M&RP to achieve compliance with the Storm Water Permit.

412.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Fontana Facility with the Storm Water Permit in its 2012/2013 Annual Report.

413.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2012/2013 Annual Report for the Fontana Facility.

414.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2012/2013 Annual Report for the Irvine Facility.

415.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2012/2013 Annual Report for the Irvine Facility.

416.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which drainage areas were observed in the 2012/2013 Annual Report for the Irvine Facility.

417.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2012/2013 Annual Report for the Irvine Facility.

418.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2012/2013 Annual Report for the Irvine Facility.

419.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2012/2013 Annual Report for the Irvine Facility.

420.  Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2012/2013 Annual Report for the Irvine Facility.

421.  Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2012/2013 Annual Report for the Irvine Facility.

422.  Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2012/2013 Annual Report for the Irvine Facility.

423.  Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Irvine Facility was in compliance with the Storm Water Permit in its 2012/2013 Annual Report.

424.  Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Irvine Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

425.  Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report for the Irvine Facility was false because the Facilities Owner and/or Operator had not revised the Irvine Facility SWPPP to achieve compliance with the Storm Water Permit.

426.  Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2012/2013 Annual Report

Irvine Facility was false because the Facilities Owner and/or Operator had not revised the Irvine Facility M&RP to achieve compliance with the Storm Water Permit.

427.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Irvine Facility with the Storm Water Permit in its 2012/2013 Annual Report.

428.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2012/2013 Annual Report for the Irvine Facility.

2013/2014 Annual Reports

429.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Compton Facility.

430.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Compton Facility.

431.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which drainage areas were observed in the 2013/2014 Annual Report for the Compton Facility.

432.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2013/2014 Annual Report for the Compton Facility.

433.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its monthly visual

observations of storm water discharges for each of its discharge points in the 2013/2014 Annual Report for the Compton Facility.

434.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2013/2014 Annual Report for the Compton Facility.

435.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2013/2014 Annual Report for the Compton Facility.

436.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2013/2014 Annual Report for the Compton Facility.

437.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2013/2014 Annual Report for the Compton Facility.

438.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Compton Facility was in compliance with the Storm Water Permit in its 2013/2014 Annual Report.

439.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Compton Facility was false because it failed to comply with each of the requirements

Complaint                                        60

of Section B(14) of the 1997 Permit.

440.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Compton Facility was false because the Facilities Owner and/or Operator had not revised the Compton Facility SWPPP to achieve compliance with the Storm Water Permit.

441.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report Compton Facility was false because the Facilities Owner and/or Operator had not revised the Compton Facility M&RP to achieve compliance with the Storm Water Permit.

442.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Compton Facility with the Storm Water Permit in its 2013/2014 Annual Report.

443.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2013/2014 Annual Report for the Compton Facility.

444.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Fontana Facility.

445.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Fontana Facility.

446.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which drainage areas were observed in the 2013/2014 Annual

Report for the Fontana Facility.

447. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2013/2014 Annual Report for the Fontana Facility.

448. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2013/2014 Annual Report for the Fontana Facility.

449. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2013/2014 Annual Report for the Fontana Facility.

450. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2013/2014 Annual Report for the Fontana Facility.

451. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2013/2014 Annual Report for the Fontana Facility.

452. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2013/2014 Annual Report for the

Fontana Facility.

453.    Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Fontana Facility was in compliance with the Storm Water Permit in its 2013/2014 Annual Report.

454.    Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Fontana Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

455.    Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Fontana Facility was false because the Facilities Owner and/or Operator had not revised the Fontana Facility SWPPP to achieve compliance with the Storm Water Permit.

456.    Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report Fontana Facility was false because the Facilities Owner and/or Operator had not revised the Fontana Facility M&RP to achieve compliance with the Storm Water Permit.

457.    Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Fontana Facility with the Storm Water Permit in its 2013/2014 Annual Report.

458.    Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2013/2014 Annual Report for the Fontana Facility.

459.    Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Irvine Facility.

460.    Plaintiffs are informed and believe, and thereon allege, that the Facilities

Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2013/2014 Annual Report for the Irvine Facility.

461.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which drainage areas were observed in the 2013/2014 Annual Report for the Irvine Facility.

462.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2013/2014 Annual Report for the Irvine Facility.

463.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2013/2014 Annual Report for the Irvine Facility.

464.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2013/2014 Annual Report for the Irvine Facility.

465.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2013/2014 Annual Report for the Irvine Facility.

466.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of

pollutants at unobserved discharge points in the 2013/2014 Annual Report for the Irvine Facility.

467.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2013/2014 Annual Report for the Irvine Facility.

468.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Irvine Facility was in compliance with the Storm Water Permit in its 2013/2014 Annual Report.

469.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Irvine Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

470.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report for the Irvine Facility was false because the Facilities Owner and/or Operator had not revised the Irvine Facility SWPPP to achieve compliance with the Storm Water Permit.

471.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2013/2014 Annual Report Irvine Facility was false because the Facilities Owner and/or Operator had not revised the Irvine Facility M&RP to achieve compliance with the Storm Water Permit.

472.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Irvine Facility with the Storm Water Permit in its 2013/2014 Annual Report.

473.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2013/2014 Annual Report for the

Complaint                                              65

1   Irvine Facility.

2        2014/2015 Annual Reports

3        474.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner

4   and/or Operator failed to include the required summary of its quarterly visual

5   observations of unauthorized non-storm water discharges for each of its drainage areas in

6   the 2014/2015 Annual Report for the Compton Facility.

7        475.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

8   Owner and/or Operator failed to include the required evaluation of its quarterly visual

9   observations of unauthorized non-storm water discharges for each of its drainage areas in

10   the 2014/2015 Annual Report for the Compton Facility.

11        476.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

12   Owner and/or Operator failed to indicate the location of non-storm water visual

13   observations to document which drainage areas were observed in the 2014/2015 Annual

14   Report for the Compton Facility.

15        477.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

16   Owner and/or Operator failed to include the required summary of its monthly visual

17   observations of storm water discharges for each of its discharge points in the 2014/2015

18   Annual Report for the Compton Facility.

19        478.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

20   Owner and/or Operator failed to include the required evaluation of its monthly visual

21   observations of storm water discharges for each of its discharge points in the 2014/2015

22   Annual Report for the Compton Facility.

23        479.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

24   Owner and/or Operator failed to include the required summary of the presence of any

25   floating and suspended material, O&G, discolorations, turbidity, odor, and source of

26   pollutants at observed discharge points in the 2014/2015 Annual Report for the Compton

27   Facility.

28        480.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

Complaint                           66

Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2014/2015 Annual Report for the Compton Facility.

481. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2014/2015 Annual Report for the Compton Facility.

482. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2014/2015 Annual Report for the Compton Facility.

483. Plaintiffs are informed and believe, and thereon allege, that during the 2014/2015 Wet Season the Facilities Owner and/or Operator failed to collect any storm water samples from the Compton Facility, despite the occurrence of at least one (1) qualifying rain event in the 2014/2015 Wet Season at the Compton Facility.

484. Plaintiffs are informed and believe, and thereon allege, that per the applicable group monitoring plan during the 2014/2015 Wet Season, and as reported in the 2014/2015 Annual Report for the Compton Facility, the Facilities Owner and/or Operator was required to collect at least one (1) storm water sample at the Compton Facility.

485. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Compton Facility was in compliance with the Storm Water Permit in its 2014/2015 Annual Report.

486. Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for

the Compton Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

487.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for the Compton Facility was false because the Facilities Owner and/or Operator had not revised the Compton Facility SWPPP to achieve compliance with the Storm Water Permit.

488.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report Compton Facility was false because the Facilities Owner and/or Operator had not revised the Compton Facility M&RP to achieve compliance with the Storm Water Permit.

489.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Compton Facility with the Storm Water Permit in its 2014/2015 Annual Report.

490.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence of its noncompliance with the Storm Water Permit in its 2014/2015 Annual Report for the Compton Facility.

491.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner and/or Operator failed to include the required summary of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2014/2015 Annual Report for the Fontana Facility.

492.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2014/2015 Annual Report for the Fontana Facility.

493.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual

1   observations to document which drainage areas were observed in the 2014/2015 Annual

2   Report for the Fontana Facility.

3      494.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

4   Owner and/or Operator failed to include the required summary of its monthly visual

5   observations of storm water discharges for each of its discharge points in the 2014/2015

6   Annual Report for the Fontana Facility.

7      495.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

8   Owner and/or Operator failed to include the required evaluation of its monthly visual

9   observations of storm water discharges for each of its discharge points in the 2014/2015

10  Annual Report for the Fontana Facility.

11     496.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

12  Owner and/or Operator failed to include the required summary of the presence of any

13  floating and suspended material, O&G, discolorations, turbidity, odor, and source of

14  pollutants at observed discharge points in the 2014/2015 Annual Report for the Fontana

15  Facility.

16     497.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

17  Owner and/or Operator failed to include the required evaluation of the presence of any

18  floating and suspended material, O&G, discolorations, turbidity, odor, and source of

19  pollutants at observed discharge points in the 2014/2015 Annual Report for the Fontana

20  Facility.

21     498.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

22  Owner and/or Operator failed to include the required summary of the presence of any

23  floating and suspended material, O&G, discolorations, turbidity, odor, and source of

24  pollutants at unobserved discharge points in the 2014/2015 Annual Report for the

25  Fontana Facility.

26     499.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

27  Owner and/or Operator failed to include the required evaluation of the presence of any

28  floating and suspended material, O&G, discolorations, turbidity, odor, and source of

Complaint                    69

1    pollutants at unobserved discharge points in the 2014/2015 Annual Report for the

2    Fontana Facility.

3         500.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

4    Owner and/or Operator certified that the Fontana Facility was in compliance with the

5    Storm Water Permit in its 2014/2015 Annual Report.

6         501.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

7    Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for

8    the Fontana Facility was false because it failed to comply with each of the requirements

9    of Section B(14) of the 1997 Permit.

10        502.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

11   Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for

12   the Fontana Facility was false because the Facilities Owner and/or Operator had not

13   revised the Fontana Facility SWPPP to achieve compliance with the Storm Water Permit.

14        503.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

15   Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report

16   Fontana Facility was false because the Facilities Owner and/or Operator had not revised

17   the Fontana Facility M&RP to achieve compliance with the Storm Water Permit.

18        504.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

19   Owner and/or Operator failed to describe instances of noncompliance at the Fontana

20   Facility with the Storm Water Permit in its 2014/2015 Annual Report.

21        505.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

22   Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence

23   of its noncompliance with the Storm Water Permit in its 2014/2015 Annual Report for the

24   Fontana Facility.

25        506.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner

26   and/or Operator failed to include the required summary of its quarterly visual

27   observations of unauthorized non-storm water discharges for each of its drainage areas in

28   the 2014/2015 Annual Report for the Irvine Facility.

Complaint                                    70

507.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its quarterly visual observations of unauthorized non-storm water discharges for each of its drainage areas in the 2014/2015 Annual Report for the Irvine Facility.

508.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to indicate the location of non-storm water visual observations to document which drainage areas were observed in the 2014/2015 Annual Report for the Irvine Facility.

509.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of its monthly visual observations of storm water discharges for each of its discharge points in the 2014/2015 Annual Report for the Irvine Facility.

510.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of its monthly visual observations of storm water discharges for each of its discharge points in the 2014/2015 Annual Report for the Irvine Facility.

511.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2014/2015 Annual Report for the Irvine Facility.

512.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at observed discharge points in the 2014/2015 Annual Report for the Irvine Facility.

513.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required summary of the presence of any

floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2014/2015 Annual Report for the Irvine Facility.

514.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include the required evaluation of the presence of any floating and suspended material, O&G, discolorations, turbidity, odor, and source of pollutants at unobserved discharge points in the 2014/2015 Annual Report for the Irvine Facility.

515.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator certified that the Irvine Facility was in compliance with the Storm Water Permit in its 2014/2015 Annual Report.

516.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for the Irvine Facility was false because it failed to comply with each of the requirements of Section B(14) of the 1997 Permit.

517.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report for the Irvine Facility was false because the Facilities Owner and/or Operator had not revised the Irvine Facility SWPPP to achieve compliance with the Storm Water Permit.

518.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's certification of compliance in the 2014/2015 Annual Report Irvine Facility was false because the Facilities Owner and/or Operator had not revised the Irvine Facility M&RP to achieve compliance with the Storm Water Permit.

519.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to describe instances of noncompliance at the Irvine Facility with the Storm Water Permit in its 2014/2015 Annual Report.

520.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence

1 | of its noncompliance with the Storm Water Permit in its 2014/2015 Annual Report for the
2 | Irvine Facility.

3 | <u>2015/2016 Annual Reports</u>

4 | 521.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
5 | Owner and/or Operator failed to analyze all storm water samples collected for all
6 | required parameters, including pollutants likely to be present in the Facilities storm water
7 | discharges in significant quantities, such as aluminum and N+N, during the 2015/2016
8 | reporting year.

9 | 522.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
10 | Owner and/or Operator certified that the Facilities were in compliance with the Storm
11 | Water Permit in its 2015/2016 Annual Reports.

12 | 523.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
13 | Owner and/or Operator's certification of compliance in the 2015/2016 Annual Reports
14 | was false because it failed to comply with each of the requirements of Section XI of the
15 | 2015 Permit.

16 | 524.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
17 | Owner and/or Operator's certification of compliance in the 2015/2016 Annual Reports
18 | was false because the Facilities Owner and/or Operator had not revised the Facilities
19 | SWPPPs to achieve compliance with the Storm Water Permit.

20 | 525.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
21 | Owner and/or Operator failed to describe instances of noncompliance with the Storm
22 | Water Permit at the Facilities in its 2015/2016 Annual Reports.

23 | 526.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
24 | Owner and/or Operator failed to include descriptions of steps taken to prevent recurrence
25 | of its noncompliance with the Storm Water Permit in its 2015/2016 Annual Reports.

26 | <u>2016/2017 Reporting Year</u>

27 | 527.   Plaintiffs are informed and believe, and thereon allege, that the Facilities
28 | Owner and/or Operator failed to collect at least two (2) storm water samples from all

Complaint                                            73

discharge locations at the Compton Facility from storm water discharges occurring during qualifying storm events during the 2016/2017 reporting year.

528.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to collect at least two (2) storm water samples from all discharge locations at the Fontana Facility from storm water discharges occurring during qualifying storm events during the 2016/2017 reporting year.

529.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to collect at least two (2) storm water samples from all discharge locations at the Irvine Facility from storm water discharges occurring during qualifying storm events during the 2016/2017 reporting year.

530.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator failed to analyze all storm water samples collected for all required parameters, including pollutants likely to be present in the Facilities storm water discharges in significant quantities, during the 2016/2017 reporting year.

**I.    Failure to Comply with Level 1 Exceedance Response Action Requirements.**

531.   Plaintiffs are informed and believe, and thereon allege, that the Fontana Facility is in Level 1 Status based on NAL exceedances during the 2015-2016 reporting year.

532.   Plaintiffs are informed and believe, and thereon allege, that the annual average for iron at the Fountain Valley Facility during the 2015-2016 reporting year was 1.67 mg/L, which exceeds the annual NAL for iron of 1.0 mg/L.

533.   The compliance group in which the Facilities Owner and/or Operator is a member submitted a report titled: "Consolidated Exceedance Response Action Level 1 Report BMI Ready Mixed Concrete Group (#241)" dated November 30, 2016 ("Consolidated Report").

534.   Plaintiffs are informed and believe, and thereon allege, that rather than conducting an evaluation to identify the BMPs in the Fontana Facility SWPPPs that

Complaint                                        74

correspond to the iron NAL exceedance at the Fontana Facility, the Consolidated Report states that the annual average NAL for iron is too low, and recommends no additional or improved BMPs to specifically address iron NAL exceedances at the Facility. *See* Consolidated Report, pp. 15-17.

535.   The Consolidated Report cites sweeping as existing BMPs for iron at the compliance group facilities. *See* Consolidated Report, pp. 15-18.

536.   The Fontana Facility SWPPPs expressly identify sweeping as a BMP that is not effective at addressing iron: "Two pollutants that are difficult to control are pH and Iron. Both of these are present in cement. Cement dust is very fine and it is difficult to sweep it up to a level that does not adversely impact storm water." *See* Facilities SWPPPs, Section 7.0 (Assessment of Potential Pollutant Sources).

537.   Plaintiffs are informed and believe, and thereon allege, that the "screening experiment" cited in the Consolidated Report failed to evaluate cement dust as a source of iron. *See* Consolidated Report, pp. 15-18.

## V.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Defendant's Discharges of Contaminated Storm Water in Violation of the Storm Water Permit Effluent Limitations and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

538.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

539.   Plaintiffs are informed and believe, and thereon allege, that Defendant failed and continues to fail to reduce or prevent pollutants associated with industrial activities at the Facilities from discharging from the Facilities through implementation of BMPs that achieve BAT/BCT.

540.   Plaintiffs are informed and believe, and thereon allege, that discharges of storm water containing levels of pollutants that do not achieve compliance with

BAT/BCT standards from the Facilities occur every time storm water discharges from the Facilities.

541.   Defendant's failure to develop and/or implement BMPs that achieve the pollutant discharge reductions attainable via BAT or BCT at the Facilities is a violation of the Storm Water Permit and the CWA. *See* 1997 Permit, Effluent Limitation B(3); 2015 Permit, Section I(D) (Finding 32), Effluent Limitation V(A); 33 U.S.C. § 1311(b).

542.   The Facilities Owner and/or Operator violates and will continue to violate the Storm Water Permit Effluent Limitations each and every time storm water containing levels of pollutants that do not achieve BAT/BCT standards discharges from the Facilities.

543.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's violations of Effluent Limitations of the Storm Water Permit and the Clean Water Act are ongoing and continuous.

544.   Each and every violation of the Storm Water Permit Effluent Limitations is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

545.   By committing the acts and omissions alleged above, the Facilities Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 4, 2012, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

546.   An action for injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Plaintiffs have no plain, speedy, or adequate remedy at law.

547.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiffs pray for judgment against Defendant as set forth hereafter.

//

## SECOND CAUSE OF ACTION

**Defendant's Discharges of Contaminated Storm Water in Violation of Storm Water Permit Receiving Water Limitations and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

548.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

549.   Plaintiffs are informed and believe, and thereon allege, that discharges of storm water containing levels of pollutants that adversely impact human health and/or the environment occur each time storm water discharges from the Facilities.

550.   Plaintiffs are informed and believe, and thereon allege, that storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards has discharged and continues to discharge each time storm water discharges from the Facilities.

551.   The Facilities Owner and/or Operator violates and will continue to violate the Storm Water Permit Receiving Water Limitations each and every time storm water containing levels of pollutants that adversely impact human health and/or the environment, and that cause or contribute to exceedances of WQS, discharges from the Facilities.

552.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's violations of Receiving Water Limitations of the Storm Water Permit and the CWA are ongoing and continuous.

553.   Each and every violation of the Storm Water Permit Receiving Water Limitations is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

554.   By committing the acts and omissions alleged above, the Facilities Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 4, 2012, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

555.   An action for injunctive relief under the Clean Water Act is authorized by Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Plaintiffs have no plain, speedy, or adequate remedy at law.

556.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiffs pray for judgment against Defendant as set forth hereafter.

### THIRD CAUSE OF ACTION

**Defendant's Discharges of Non-Storm Water in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

557.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

558.   Plaintiffs are informed and believe, and thereon allege, that prohibited non-storm water discharges have discharged and continue to discharge from the Facilities, in violation of the Storm Water Permit and/or CWA Section 301(a). 33 U.S.C. § 1311(a).

559.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's violations of Discharge Prohibitions of the Storm Water Permit are ongoing and continuous.

560.   Each and every violation of the Storm Water Permit Discharge Prohibitions is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

561.   By committing the acts and omissions alleged above, the Facilities Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 4, 2012, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

562.   An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would

Complaint                                                78

1  irreparably harm Plaintiffs and the citizens of the State of California, for which harm

2  Plaintiffs have no plain, speedy, or adequate remedy at law.

3      563.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because

4  an actual controversy exists as to the rights and other legal relations of the Parties.

5      WHEREFORE, Plaintiffs prays for judgment against Defendant as set forth

6  hereafter.

7                        **FOURTH CAUSE OF ACTION**

8      **Defendant's Failure to Adequately Develop, Implement, and/or**
   **Revise a Storm Water Pollution Prevention Plan in Violation of the**
9      **Storm Water Permit and the Clean Water Act.**

10          **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

11     564.   Plaintiffs incorporate the allegations contained in the above paragraphs as

12  though fully set forth herein.

13     565.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

14  Owner and/or Operator has failed and continues to fail to develop adequate SWPPPs for

15  the Facilities, in violation of the Storm Water Permit.

16     566.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

17  Owner and/or Operator has failed and continues to fail to adequately implement SWPPPs

18  for the Facilities, in violation of the Storm Water Permit.

19     567.   Plaintiffs are informed and believe, and thereon allege, that Facilities Owner

20  and/or Operator has failed and continues to fail to adequately revise SWPPPs for the

21  Facilities, in violation of the Storm Water Permit.

22     568.   The Facilities Owner and/or Operator has been in violation of the Storm

23  Water Permit at the Facilities every day from April 4, 2012, to the present.

24     569.   The Facilities Owner and/or Operator's violations of the Storm Water Permit

25  and the CWA at the Facilities are ongoing and continuous.

26     570.   The Facilities Owner and/or Operator will continue to be in violation of the

27  Storm Water Permit and the CWA each and every day the Facilities Owner and/or

28

Complaint                                    79

1   Operator fails to adequately develop, implement, and/or revise the SWPPPs for the

2   Facilities.

3       571.   Each and every violation of the Storm Water Permit SWPPP requirements at

4   the Facilities is a separate and distinct violation of the CWA.

5       572.   By committing the acts and omissions alleged above, the Facilities Owner

6   and/or Operator is subject to an assessment of civil penalties for each and every violation

7   of the CWA occurring from April 4, 2012, to the present, pursuant to Sections 309(d) and

8   505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

9       573.   An action for injunctive relief under the CWA is authorized by Section

10  505(a) of the CWA. 33 U.S.C. § 1365(a). Continuing commission of the acts and

11  omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of

12  California, for which harm Plaintiffs have no plain, speedy, or adequate remedy at law.

13      574.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because

14  an actual controversy exists as to the rights and other legal relations of the Parties.

15      WHEREFORE, Plaintiffs pray for judgment against the Defendant as set forth

16  hereafter.

17  ### FIFTH CAUSE OF ACTION

18  **Defendant's Failure to Adequately Develop, Implement, and/or**
19  **Revise a Monitoring and Reporting Plan in Violation of the Storm**
    **Water Permit and the Clean Water Act.**
20  **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**
21

22      575.   Plaintiffs incorporate the allegations contained in the above paragraphs as

23  though fully set forth herein.

24      576.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

25  Owner and/or Operator has failed and continues to fail to develop adequate M&RPs for

26  the Facilities, in violation of the Storm Water Permit.

27      577.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

28  Owner and/or Operator has failed and continues to fail to adequately implement M&RPs

Complaint                                  80

1   for the Facilities, in violation of the Storm Water Permit.

2       578.   Plaintiffs are informed and believe, and thereon allege, that the Facilities

3   Owner and/or Operator has failed and continues to fail to adequately revise M&RPs for

4   the Facilities, in violation of the Storm Water Permit.

5       579.   The Facilities Owner and/or Operator has been in violation of the Storm

6   Water Permit monitoring requirements at the Facilities every day from April 4, 2012, to

7   the present.

8       580.   The Facilities Owner and/or Operator's violations of the Storm Water Permit

9   monitoring requirements and the CWA at the Facilities are ongoing and continuous.

10      581.   The Facilities Owner and/or Operator will continue to be in violation of

11  Section B and Provision E(3) the 1997 Permit, Section XI of the 2015 Permit, and the

12  CWA each and every day it fails to adequately develop, implement, and/or revise

13  M&RPs for the Facilities.

14      582.   Each and every violation of the Storm Water Permit M&RP requirements at

15  the Facilities is a separate and distinct violation of the CWA.

16      583.   By committing the acts and omissions alleged above, the Facilities Owner

17  and/or Operator is subject to an assessment of civil penalties for each and every violation

18  of the CWA occurring from April 4, 2012, to the present, pursuant to Sections 309(d) and

19  505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

20      584.   An action for injunctive relief under the CWA is authorized by Section

21  505(a) of the CWA. 33 U.S.C. § 1365(a). Continuing commission of the acts and

22  omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of

23  California, for which harm Plaintiffs have no plain, speedy, or adequate remedy at law.

24      585.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because

25  an actual controversy exists as to the rights and other legal relations of the Parties.

26      WHEREFORE, Plaintiffs pray for judgment against the Defendant as set forth

27  hereafter.

28  //

Complaint             81

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIXTH CAUSE OF ACTION

**Defendant's Failure to Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act.**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

586.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

587.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator has failed and continues to fail to submit accurate Annual Reports to the Regional Board, in violation of Sections B(14), C(9), and C(10) of the 1997 Permit.

588.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's Annual Reports failed to meet the monitoring and reporting requirements of the Storm Water Permit, in violation of Section B(14) of the 1997 Permit.

589.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator's 2015/2016 Annual Reports fail to meet the requirements of Section XVI(B) of the 2015 Permit.

590.   The Facilities Owner and/or Operator has been in violation of Section B(14) of the 1997 Permit and the CWA every day since at least April 4, 2012.

591.   The Facilities Owner and/or Operator has been in violation of Section XVI of the 2015 Permit and the CWA every day since at least July 15, 2016.

592.   The Facilities Owner and/or Operator's violations of the reporting requirements of the Storm Water Permit and the CWA are ongoing and continuous.

593.   By committing the acts and omissions alleged above, the Facilities Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from April 4, 2012, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

Complaint                                                    82

594.   An action for injunctive relief under the CWA is authorized by Section 505(a) of the CWA. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Plaintiffs have no plain, speedy, or adequate remedy at law.

595.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiffs pray judgment against the Defendant as set forth hereafter.

## SEVENTH CAUSE OF ACTION

### Defendant's Failure to Submit a Level 1 ERA Report as Required by the Storm Water Permit in Violation of the Storm Water Permit and the Clean Water Act.

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

596.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

597.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator has failed and continues to fail to conduct a Level 1 status evaluation and submit a Level 1 ERA Report for the Fontana Facility.

598.   Plaintiffs are informed and believe, and thereon allege, that the Facilities Owner and/or Operator has conducted an inadequate Level 1 status evaluation and submitted an inadequate Level 1 ERA Report for the Fontana Facility.

599.   The Facilities Owner and/or Operator violations of the Level 1 ERA requirements of the Storm Water Permit and the CWA are ongoing and continuous.

600.   Every day the Facilities Owner and/or Operator conducts operations at the Fontana Facility without a Level 1 status evaluation and/or a Level 1 ERA Report, and/or an adequate Level 1 status evaluation and/or an adequate Level 1 ERA Report, is a separate and distinct violation of the Storm Water Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

Complaint                                    83

601.   The Facilities Owner and/or Operator has been in daily and continuous violation of the Storm Water Permit Level 1 status ERA requirements every day since at least July 1, 2016.

602.   By committing the acts and omissions alleged above, the Facilities Owner and/or Operator is subject to an assessment of civil penalties for each and every violation of the CWA occurring from July 1, 2016, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

603.   An action for injunctive relief under the CWA is authorized by Section 505(a) of the CWA. 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiffs and the citizens of the State of California, for which harm Plaintiffs have no plain, speedy, or adequate remedy at law.

604.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

WHEREFORE, Plaintiffs pray judgment against the Defendant as set forth hereafter.

## VI.    RELIEF REQUESTED

605.   Plaintiffs respectfully request that this Court grant the following relief:

a.    A Court order declaring the Defendant to have violated and to be in violation of Sections 301(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b); for discharging pollutants from the Facilities in violation of a permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to meet effluent limitations which include BAT/BCT requirements, for failing to meet receiving water limitations, and for failing to comply with the substantive and procedural requirements of the Storm Water Permit.

b.    A Court order enjoining Defendant from discharging pollutants without an NPDES permit;

c.    A Court order requiring Defendant to implement affirmative injunctive measures designed to eliminate Defendant's violations of the substantive and procedural

1  requirements of the Storm Water Permit and the Clean Water Act;

2        d.      A Court order assessing civil monetary penalties for each violation of the

3  CWA at $37,500.00 per day per violation for all CWA violations after January 12, 2009,

4  and $52,414.00 per day per violation for violations that occurred after November 2, 2015,

5  as permitted by CWA Section 309(d), 33 U.S.C. § 1319(d) and Adjustment of Civil

6  Monetary Penalties for Inflation, 40 C.F.R. § 19.4 (2009);

7        e.      A Court order awarding Plaintiffs their reasonable costs of suit, including

8  attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean

9  Water Act, 33 U.S.C. § 1365(d); and

10       f.      Any other relief as this Court may deem appropriate.

12  Dated: June 9, 2017                        Respectfully submitted,

13                                             LAWYERS FOR CLEAN WATER, INC.

19                                             _____
                                               Drevet Hunt
                                               Attorney for Plaintiffs